Christianna A. Cathcart, Esq.
Bar No.: ND 10095
THE BELMONT FIRM
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 655-2066
E-Mail: christianna@dcbankruptcy.com
*Counsel for the Debtor*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | Case No.: 24-00393 |
| MARIA D. REDDICK | Chapter 11 (Subchapter V) |
| Debtor. | |

## MOTION TO APPROVE COMPROMISE WITH RESIDENTIAL ONE

Comes now Maria D. Reddick ("Ms. Reddick" or the "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 9019, and as for her motion to approve a compromise with Residential One, LLC t/a/ 3 Tree Flats ("Residential One") that will resolve the contested Motion for Relief from the Automatic Stay ("Motion" as found at DE #60), and in support thereof states as follows:

### I.    Introduction

The agreement for which approval is sought (the "Agreement") was entered into in good faith to resolve a contested Motion filed by Residential One, concerning possession of the leased premises located at 3910 Georgia Avenue, NW, Apartment 619, Washington, D.C. 20011 (the "Leased Premises"). The Agreement provides finality and certainty to both parties, preserves

1

valuable estate assets, reduces the risk of protracted litigation, and allows the Debtor to focus on a successful Subchapter V reorganization.

Prior to seeking bankruptcy protection, the Debtor occupied the Leased Premises under a residential lease (the "Lease") with Residential One. In the months preceding the Debtor's Subchapter V filing, Residential One initiated landlord-tenant proceedings in the Superior Court for the District of Columbia, ultimately obtaining a judgment for possession on November 15, 2024 (the "Possession Judgment"). The Debtor subsequently filed for bankruptcy on November 21, 2024 (DE #1), triggering the automatic stay (the "Automatic Stay"), which provides broad protections against creditor actions, including evictions. Despite this, on February 6, 2025, Residential One executed an eviction, changing the locks and restricting the Debtor's access to the Leased Premises without first obtaining relief from the Automatic Stay. Residential One asserts that it did not know about the Debtor's bankruptcy case when it took those actions and has since sought to annul the Automatic Stay. This action, taken without court authorization, exposed Residential One to potential liability for stay violations, including the risk of administrative claims.

Recognizing the uncertainty, cost, and potential disruption associated with litigating this issue, the parties engaged in settlement discussions, ultimately reaching an Agreement that resolves the dispute in a practical and efficient manner. The Agreement confirms the validity of the eviction, releases both parties from potential claims related to the alleged stay violation, and removes a significant obstacle to the Debtor's reorganization. It eliminates the need for protracted litigation over the scope of the Automatic Stay, reduces the administrative burden on the estate,

and allows the Debtor to focus on achieving a successful plan of reorganization. The Debtor now seeks formal approval of this Agreement.

**II.    Terms of Agreement**

In lieu of attaching a settlement agreement, the parties proposed a relatively straightforward, comprehensive resolution that will fully and finally resolve all disputes concerning the tenancy, possession, and use of the Leased Premises. The terms are as follows:

1.    The Debtor agrees to surrender possession of the Leased Premises located at 3910 Georgia Avenue, NW, Apartment 619, Washington, D.C. 20011, by no later than June 16, 2025. The Debtor acknowledges that the eviction executed on or about February 6, 2025, was valid and agrees not to contest the validity of the eviction or seek any future rights to possession.

2.    The Debtor shall remove all personal property, including furniture and other possessions, from the Leased Premises by no later than June 16, 2025. Any items not removed by this date shall be deemed abandoned and may be disposed of by Residential One at its sole discretion, without further notice to the Debtor.

3.    To facilitate the removal of personal property, Residential One agrees to provide the Debtor with reasonable access to the Leased Premises for the sole purpose of removing personal property and furniture. This access shall be provided upon reasonable notice and shall include the provision of a key or other necessary access arrangements, provided such access is requested no later than June 16, 2025.

4.    Upon the Debtor's unequivocal surrender of the Leased Premises, including the removal of all personal property as required under this Agreement, Residential One agrees to vacate the Possession Judgment. Residential One shall file the necessary paperwork to effectuate

this vacatur within 10 days of receiving written confirmation that the premises have been fully vacated.

5.      Upon Debtor timely surrendering possession of the Leased Premises, time being of the essence, Residential One agrees to waive and release any and all claims, demands, and causes of action, known or unknown, including but not limited to prepetition rent, rejection damages, administrative claims, or any other obligations arising under the Lease.

6.      The Debtor releases Residential One from any and all claims, demands, and causes of action, known or unknown, including but not limited to claims for alleged violations of the Automatic Stay, tenant rights, or any other potential causes of action related to the tenancy.

7.      This Agreement fully resolves all outstanding issues related to the tenancy, possession, and use of the Leased Premises. Neither party shall have any further obligations to the other, except as expressly set forth herein.

8.      This Agreement shall be binding upon the parties and their respective successors and assigns, and may only be modified in writing, signed by both parties.

## III.    Standard

The Federal Rules of Bankruptcy Procedure specifically provide for the approval of compromises and settlements upon a motion and hearing:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

The United States District Court for the District of Columbia has previously set forth the criteria by which a motion under Federal Rule of Bankruptcy Procedure 9019 is to be evaluated:

> …a bankruptcy judge "need not hold a mini-trial or write an extensive opinion every time he approves or disapproves a settlement."  While neither the Bankruptcy

4

Code nor Bankruptcy Rule 9019 offers guidance as to the criteria a bankruptcy court applies in evaluating a proposed settlement, the parties generally agree that, following the principles of *TMT Trailer Ferry*, the bankruptcy court should consider: (1) probability of success in the litigation; (2) difficulties, if any, with collection; (3) the complexity of the litigation, including the expense, inconvenience and delay attendant to the litigation; and (4) the interest of creditors.

*Advantage Healthplan, Inc. v. Potter*, 391 B.R. 521, 554 (D. D.C. 2008), aff'd sub nom. *Greater Se. Cmty. Hosp. Found., Inc. v. Potter*, 586 F.3d 1 (D.C. Cir. 2009) (quoting *In re Fishell*, 47 F.3d 1168 (6th Cir.1995); citing *Southern Med. Arts Companies, Inc.*, 343 B.R. 250, 256 (10th Cir. BAP 2006); *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968)).

## IV.    Argument: The Settlement Should be Approved

This is a practical and efficient resolution that serves the interest of all parties involved, including the Debtor, the Movant, and the broader creditor body. It acknowledges the practical realities of the case and the limitations of continued litigation, making it a common-sense solution that warrants this Honorable Court's approval.

At its core, the proposed settlement effectively resolves a contentious dispute over the Automatic Stay, a question that has already generated motion practice and would likely require prolonged and expensive litigation to fully resolve. Residential One argues that the Automatic Stay never went into effect because it obtained a prepetition judgment for possession on November 15, 2024, and evicted the Debtor without knowledge of the bankruptcy filing on February 6, 2025. In contrast, the Debtor has argued that the eviction violated the Automatic Stay because she retained a possessory interest in the Leased Premises on the petition date, rendering the eviction void ab initio. These are not straightforward issues. They lie at the intersection of bankruptcy law and state landlord-tenant law, each raising nuanced and potentially contentious questions, including whether

the Debtor "resided" at the Leased Premises under 11 U.S.C. § 362(b)(22) and the precise contours of her rights as a month-to-month tenant.

This settlement effectively sidesteps the substantial uncertainty surrounding these complex legal questions. While the Debtor has strong arguments that the eviction violated the Automatic Stay, Residential One's defenses, including its argument that the stay never attached, presents significant risks. Even if the Debtor were to prevail, achieving a final, favorable ruling would require not only extensive briefing but also the marshaling of fact-specific evidence regarding the Debtor's residency and possessory rights, potentially followed by multiple layers of appeal. This settlement eliminates those risks by confirming the validity of the eviction, removing a substantial source of potential liability, and avoiding the uncertain outcome of protracted litigation.

Even if the Debtor succeeded in proving a stay violation, actual recovery would be far from certain. Collection a judgment for damages under 11 U.S.C. § 362(k) would likely involve significant hurdles, including disputes over the appropriateness and amount of such claims, potential appeals, and enforcement challenges. These realities make any recovery uncertain and potentially delayed, consuming valuable estate resources in the process. The proposed settlement avoids these uncertainties, providing a predictable and immediate resolution that benefits the estate and creditors alike.

The costs of fully litigating this dispute go beyond the financial. It would require significant time and energy from the Debtor, her counsel, and the Court, distracting from the broader goal of a successful reorganization. The need for fact-intensive hearings, potentially including witness testimony and documentary evidence, would impose burdens on all parties involved. Moreover, litigating these issues in the context of a Subchapter V case risks creating an administrative drain

6

that could undermine the overall reorganization effort. The proposed settlement sidesteps these burdens, allowing the Debtor to focus her resources on a more efficient path to confirmation.

Crucially, this settlement aligns directly with the interest of creditors. It eliminates a significant potential administrative liability, preserves assets for distribution to other creditors, and ensures a more efficient administration of the estate. By resolving this potential liability, the Agreement reduces the risk of future administrative expenses and provides a clearer path forward for the Debtor's reorganization. It also allows the Debtor to focus on a successful reorganization without the looming threat of additional litigation, ultimately maximizing the estate's value of all stakeholders.

In sum, this settlement reflects a fair and reasonable compromise that appropriately balances the risks and benefits of continued litigation, eliminates significant potential liabilities, and facilitates the efficient administration of the estate. It was reached through arm's-length negotiation, reflects a balance and considered compromise by both parties, and serves the best interest of the Debtor, her creditors, and the estate as a whole.

## V.    Conclusion

WHEREFORE, Maria Reddick respectfully prays this Honorable Court (i) approve the Agreement; and (ii) afford such other and further relief as may be just and proper

*[Signature on Following page]*

Respectfully Submitted,

By:    /s/ Christianna A. Cathcart
Christianna A. Cathcart, Esq.
Bar No.: MD18071
THE BELMONT FIRM
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 655-2066
E-Mail: christianna@dcbankruptcy.com
*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of May 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Christianna A. Cathcart
Christianna A. Cathcart, Esq.