IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-00393 |
| | ) | (Chapter 11) |
| MARIA D. REDDICK | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MARIA D. REDDICK'S FIFTH
<u>AMENDED SUBCHAPTER V PLAN OF REORGANIZATION</u>**

Comes now Maria D. Reddick ("Ms. Reddick" or the "Debtor"), by and through undersigned counsel, pursuant to the rigors of Official Form 425A and Section 1193 of Title 11 of the United States Code, and provides the following fifth amended plan of reorganization (the "Plan") herein:

**Background for Cases Filed Under Subchapter V**

**a. Description and History of the Debtor's Business**

Resilience often emerges most clearly in the face of life's greatest challenges, and few embody this more fully than Ms. Reddick, whose determination spans multiple professional realms. She serves as a Program Specialist with the District of Columbia's Department of Buildings, holds broker licenses in D.C., Maryland, and Virginia, works seasonally with Delta Airlines when she is able, and has formed several single-member LLCs to manage her real estate ventures. Beyond her vocational roles, she maintains an unwavering commitment to both community and family.

Yet, even the most resourceful individuals can find themselves navigating financial headwinds. In Ms. Reddick's case, her current financial reorganization is a deliberate effort at recalibration. At the heart of this case lies her investment property, which she has long regarded as her "true home." This property represents more than bricks and mortar; it symbolizes the vision and initiative that underlie her entrepreneurial endeavors. When mortgage payments fell behind— exacerbated by a tenant struggling with rent and an unoccupied suite—she chose empathy over eviction, a response that reflects her broader ethos in both business and personal matters.

Ms. Reddick now formally seeks to reorganize under the provisions of this Plan. As an intelligent and accomplished professional, Ms. Reddick has long exemplified a commitment to excellence across multiple roles. She is precisely the kind of debtor envisioned by Subchapter V of Chapter 11 of Title 11 of the United States Code—someone who, though facing temporary financial obstacles, has a clear path to restructuring and future financial success.

This case was thusly filed on November 21, 2024, with the open and transparent aim of utilizing the tools uniquely available under Title 11 of the United States Code (the "Bankruptcy Code") to preserve her "true home" through planned renovations, the reoccupation of the vacant suite, and the restructuring of her mortgage obligations. Although a recent fire has temporarily interrupted rental operations at the property, the Debtor is pursuing insurance coverage and repairs with the goal of restoring the premises to rentable condition and protecting the value of the

collateral for all interested parties. Guided by resourcefulness, empathy, and a steadfast dedication to her obligations, Ms. Reddick's primary objective is not merely to prevent foreclosure but to safeguard the foundation she has built for her future and for the well-being of those who rely on her.

### b. Liquidation Analysis & Secured Claim Valuation

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as they would in a Chapter 7 liquidation. The Debtor initially entered bankruptcy with assets totaling $1,034,864.67. Of that figure, $610,000.00 represents secured claims, $166,320.00 represents non-debtor equity, and $21,986.99 comprises exemptions. Based on a mechanical calculation, those deductions would leave $196,557.68 in nonexempt property available for liquidation. Subtracting $13,077.88 in estimated Chapter 7 administrative expenses from that nonexempt amount suggests that $183,479.80 would be available to pay general unsecured creditors. Compared to the total unsecured debt of $380,957.96, this approach suggests a dividend of approximately 48.16% under a hypothetical Chapter 7 scenario.

The Debtor contends, however, that a Chapter 7 liquidation would yield significantly less than this arithmetic calculation implies. After carefully evaluating each asset's realistic liquidation value and associated administrative costs, the Debtor proposes the following adjustments: (i) retaining the Navy Federal Credit Union balance of $18,208.18 at full value; (ii) treating the tax refunds of $17,011.00 and $8,161.00 as fully collectible; (iii) discounting the $14,000.00 interest in BeBe Realty Sales and Consulting by 90% to $1,400.00, given that its value depends heavily on the Debtor's personal expertise; (iv) discounting the $2,975.00 interest in Luka Holdings by 90% to $297.50, for the same reason; (v) discounting $112,825.50 in unpaid rent by 90% to $11,282.50, to reflect the practical barriers to tenant collection; and (vi) discounting the $22,680.00 interest in an unprobated estate by 75%, resulting in a value of $5,670.00. After factoring in $6,351.51 for Chapter 7 administrative expenses, the Debtor calculates that the actual amount of nonexempt property would total $55,678.67, resulting in a return of only 14.62% to general unsecured creditors.

Meanwhile, the Debtor's Plan proposes a more structured approach to asset management and debt repayment. Notably, the Plan acknowledges the fully secured $610,000.00 claim and provides for its repayment under restructured terms. For general unsecured creditors, the Debtor proposes total distributions of $100,185.00 over five years—an amount that is likely to exceed what would be realized in a Chapter 7 "fire sale." By avoiding rushed asset liquidation and preserving the Debtor's ability to collect on receivables and business interests, the Plan is designed to maximize overall creditor recovery. Creditors will therefore receive at least as much under this methodical Chapter 11 approach as they would be in a Chapter 7 liquidation—and, more likely, to exceed that amount—since the Plan is designed to protect and enhance values that would otherwise be lost or heavily discounted in a forced liquidation scenario.

### c. Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Debtor must also demonstrate that she will have sufficient cash flow over the life of this Plan to make all required payments and continue operations without the need for further reorganization. Forward-looking financial projections (the "Financial Projections") are attached as Exhibit A and incorporated herein by reference. These projections show that the Debtor will generate adequate disposable income (as defined in § 1191(d) of the Bankruptcy Code) to fund all

distributions required under this Plan. The Financial Projections assume that the property will be restored to rentable condition and that any interruption in rental income caused by the post-petition fire will be temporary and offset, in part, by the Debtor's employment income and revenue from other business activities.

Notwithstanding the Debtor's confidence in the Financial Projections, she recognizes that real estate and related ventures are inherently subject to economic and operational risks, including market fluctuations, tenant turnover, and unanticipated repair or renovation expenses. The recent fire at the Property exemplifies the risks inherent in such operations. While the Debtor has relief on the best available data to forecast post-renovation occupancy and rental rates, she acknowledges that no projection can guarantee future performance. If material setbacks arise—such as unexpected vacancies, unanticipated increases in costs, or adverse market shifts—the Debtor will endeavor to mitigate these risks promptly, including completing necessary repairs, adjusting operations, and, if warranted, seeking modifications within the bounds of the Bankruptcy Code and any applicable Plan provisions, in order to preserve feasibility and protect creditor interests.

Despite such uncertainties, the Debtor maintains that her realistic revenue assumptions, combined with prudent cost management and a defined plan for rent collection, will generate sufficient disposable income to satisfy all projected Plan distributions. The Debtor has also established contingency measures, such as maintaining a reserve for unexpected expenses and incorporating flexible lease terms, to further promote the ongoing feasibility of the Plan. In the Debtor's view, these strategies best position both the Debtor and creditors to benefit from a successful reorganization and reduce the likelihood of a subsequent bankruptcy filing. Accordingly, the Debtor believes that this Plan is feasible within the meaning of Section 1191(c)(3) of the Bankruptcy Code and that it provides a reasonable likelihood of successful completion without the need for further reorganization.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**Article 1.     Summary**

This Plan under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") proposes to pay creditors of the Debtor from the general cash flow of the Debtor.

The Plan provides for:     Two (2) classes of secured claims; and

One (1) class of non-priority, unsecured claims.

The Plan also provides for the payment of administrative priority claims other than those placed in classes.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**Article 2.     Classification of Claims and Interests**

| | | |
|---|---|---|
| **Section 2.01** | **Class 1** | The secured claim of PHH Mortgage Service. The unsecured portion of this creditor's claim is placed in Class 3, and this creditor is thusly regarded as holding two claims. |
| **Section 2.02** | **Class 2** | The secured claims of Navy Federal Credit Union. |
| **Section 2.03** | **Class 3** | All general unsecured claims. |

**Article 3.**   **Treatment of Administrative Expense Claims and Court Costs**

| | | |
|---|---|---|
| **Section 3.01** | **Unclassified Claims** | Under § 1123(a)(1) of the Bankruptcy Code, certain administrative expense claims are not in classes. |
| **Section 3.02** | **Administrative Expense Claims** | All professionals, including the Debtor's counsel and the Subchapter V Trustee, must file applications with the Court to seek approval of their fees and expenses as allowed administrative expense claims within 30 days of the Effective Date. Any allowed administrative expense claim will be paid through the life of this Plan, in accordance with Section 1191(e) of the Bankruptcy Code. Allowed administrative expense claims will be paid first from funds otherwise payable to Class 3. To the extent that any secured creditor, including PHH Mortgage Service, advances funds post-petition for the payment of real estate taxes, insurance, or other necessary property-protection expenses (including any emergency stabilization, remediation, or repair work related to the recent fire at the Property), such advances shall constitute administrative expense claims under Section 503(b)(1) of the Bankruptcy Code and shall be paid either through monthly payments under the applicable class treatment or upon completion of the Plan. |
| **Section 3.03** | **Priority Tax Claims** | Each holder of a priority tax claim will be paid in full no later than November 21, 2029. The Debtor expressly reserves the right to object to the allowance of any such claim, whether filed or amended. To the extent a priority tax claim is allowed, such claim shall be paid in full through the term of this Plan. |
| **Section 3.04** | **Statutory Fees** | There are no statutory fees due in this case. |
| **Section 3.05** | **Prospective Quarterly Fees** | There are no prospective quarterly fees that will be due in this case. |

4

**Article 4.    Treatment of Claims and Interest Under the Plan**

**Class 1 – PHH Mortgage Service.        Impaired.**        Class 1 consists of the secured portion of the claim of PHH Mortgage Service, which is secured by a first-priority deed of trust on the real property located at 4012 14th Street NW, Washington DC, 20011 (the "Property"). This class is impaired, inasmuch as the Plan seeks to alter the terms upon which this debt shall be paid. The total amount of the secured claim is fixed at Six Hundred Ten Thousand Dollars ($610,000.00), representing the stipulated value of the Property as of the Effective Date of the Plan. The Debtor shall pay this obligation in accordance with modified terms, which provide for interest at a fixed annual rate of Three and Three-Eighths Percent (3.375%) per annum, calculated on a thirty (30)-year amortization schedule. The Debtor shall make monthly payments of Two Thousand Six Hundred Ninety-Six Dollars and Seventy-Seven Cents ($2,696.77), commencing on the Effective Date, and continuing on the first day of each month thereafter for a period of one hundred twenty (120) months.

At the conclusion of the ten (10)-year term, the Debtor shall make a final balloon payment of all remaining unpaid principal and accrued interest, estimated at approximately Four Hundred Ninety-Six Thousand Eight Hundred Eighty-Nine Dollars and Eighty-Seven Cents ($496,889.87). The Debtor shall satisfy this obligation through refinancing or such other commercially reasonable means as may be available and shall provide the secured creditor with not less than ninety (90) days' written notice of the proposed method of payment. The projected amortization schedule ("Amortization Schedule"), attached hereto as Exhibit B, is incorporated herein by reference and reflects the monthly-payment structure and balloon repayment obligations. This structure is further detailed in Article 7 (Means for Implementation of the Plan).

The Debtor shall maintain current payments for all real estate taxes and hazard insurance associated with the Property. Any post-petition advances made by PHH Mortgage Service for the payment of taxes, insurance, or property protection shall constitute administrative expense claims in accordance with Article 3 (Administrative Expense Claims of this Plan) of this Plan.

Default and remedies applicable to this Class shall be governed by Section 8.05 (Default) of this Plan, which provides for written notice, a thirty (30)-day opportunity to cure, and termination of the automatic stay pursuant to Section 362 of the Bankruptcy Code upon an uncured default. The lien of PHH Mortgage Service shall be retained until the allowed secured claim, together with all interest and approved administrative advances, has been paid in full. Any portion of the claim not secured by the value of the Property shall be treated as a general unsecured claim in Class 3.

The Amortization Schedule attached as Exhibit B is based on the allowed secured claim, the fixed interest rate of Three and Three-Eighths Percent (3.375%) per annum, and a thirty (30) year amortization. It assumes an allowed secured claim of Six Hundred Ten Thousand Dollars ($610,000.00) as of the petition date and further assumes that interest accrues at that rate from the petition date through the Effective Date, when payments under this Class commence. For ease of presentation, the Amortization Schedule begins with a single beginning principal balance as of the first payment date that reflects both the stipulated Six Hundred Ten Thousand Dollar ($610,000.00) claim amount and the post-petition interest that has accrued through that date, and then illustrates one hundred twenty (120) equal monthly payments of Two Thousand Six Hundred

Ninety-Six Dollars and Seventy-Seven Cents ($2,696.77), the allocation of each payment between principal and interest over time, and the estimated remaining principal balance that will be due as the balloon payment at the end of the ten (10) year term. The Amortization Schedule is provided as an illustrative aid only. For the avoidance of doubt, if the actual Effective Date or first payment date differs from the date assumed in the Amortization Schedule, the parties may adjust the internal interest accrual and application of the Schedule as necessary to remain consistent with the allowed amount, interest rate, and monthly payment provided for in this Class, without altering those economic terms.

**Class 2 – Navy Federal Credit Union.** **Impaired.** Class 2 consists of the secured claims of Navy Federal Credit Union ("Navy Federal"). This class is impaired, inasmuch as the Plan modifies the timing of payments on this obligation. The Debtor shall not be required to make any payments during the first six (6) months following the Effective Date. Beginning with the first business day of the seventh month following the Effective Date, the Debtor shall resume making monthly payments directly to Navy Federal in the ordinary course, in the contractual amount required under the applicable loan documents and in accordance with their remaining term, to the extent enforceable under non-bankruptcy law. Any contractual interest that accrues during the initial six-month payment suspension shall be added to the outstanding principal balance and paid over the remaining term in accordance with the resumed payment schedule. This class shall be deemed contractually current as of the Effective Date of the Plan, unless otherwise agreed by the parties, or modified by order of the Court. The lien on the share account shall be retained until the secured claim is paid in full.

**Class 3 – General Unsecured Creditors.** **Impaired.** Class 3 consists of all allowed general unsecured claims. This class is impaired inasmuch as the Plan modifies the rights of such claims by providing for partial payment of their allowed amounts over time rather than payment in full upon confirmation. After payment in full of all secured claims and administrative expenses as provided in this Plan, Class 3 shall receive pro rata distributions from funds allocated by the Debtor over the life of the Plan, in an aggregate amount not less than One Hundred Thousand One Hundred Eighty-Five dollars and No Cents ($100,185.00). All allowed administrative expense claims shall be paid first from funds otherwise available for distribution to this class, in accordance with Article 3 (Administrative Expense Claims) of this Plan. If, after such payments, no funds remain available for distribution, then no further payments shall be made to this class.

**Article 5.** **Allowance and Disallowance of Claims**

**Section 5.01 Disputed Claim.** A *disputed claim* is a claim that has not been allowed or disallowed and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**Section 5.02 Delay of Distribution of Disputed Claims.** No distribution will be made on account of a disputed claim unless such claim is allowed by a final, non-appealable order.

**Section 5.03 Settlement of Disputed Claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Section 5.04 Time to Dispute Claims.** The Debtor does not presently anticipate objecting to any claims herein but reserves the right to do so. Any such claim objection must be filed by the Debtor within one hundred eighty (180) days from the Effective Date of this Plan (as defined in Section 8.02 herein), except any objection to the claim of any governmental tax creditor may be filed at any time within six months of the date on which such claim is filed.

**Section 5.05 Bifurcation of PHH Mortgage Service Claim.** For the avoidance of doubt, Claim No. 12 held by PHH Mortgage Service, shall be deemed bifurcated pursuant to 11 U.S.C. §506(a) as follows: (i) a secured claim in the amount of $610,000.00, treated in Class 1 of this Plan; and (ii) an unsecured deficiency claim for any remaining balance, treated in Class 3. Such bifurcation and classification shall be binding upon confirmation of this Plan, unless otherwise ordered by the Court.

**Section 5.06 Effect of Classification.** The classification of claims and interests under Article 4 shall control the allowance and distribution of payments hereunder. Unless otherwise ordered by the Court, the treatment afforded to each class under Article 4 shall constitute a final determination of the nature and priority of each claim or interest for purposes of Plan implementation.

**Article 6.     Provisions for Executory Contracts and Unexpired Leases**

**Section 6.01  Assumption.** The Debtor assumes the executory contracts and unexpired leases with (i) Luka Holdings LLC/ Peter Fleck. The Debtor also assumes all executory contracts and unexpired leases for the provision of utility services to any building occupied by the Debtor and the provision of insurance to the Debtor.

**Section 6.02  Cure Payments.** Consistent with the provisions of Article 4 hereof, the Debtor will not make complete cure payments, to the counterparties of assumed contracts and unexpired leases, on the Effective Date. The Debtor will, rather, make such payments in equal installments over a period of one year, commencing on the first business day of the first month succeeding the Effective Date. For purposes of Section 365(b)(1)(A) of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), the Debtor submits that the temporally prioritized payment of these arrearages under this Plan, coupled with the Debtor's healthy post-petition financial performance and timely making of post-petition rent payments, constitutes "adequate assurance" of the cure payments being made. The Debtor equally submits that in the prism of this case, a one-year cure period is "prompt" in nature. Upon diligent inquiry, however, the Debtor is not presently aware of any cure amounts due and owing.

**Section 6.03  Rejection.** The Debtor rejects all executory contracts and unexpired leases not assumed in Section 6.01 hereof.

**Article 7.     Means for Implementation of the Plan**

The Debtor will continue to be employed as a Program Specialist with the District of Columbia's Department of Buildings, which provides a stable and consistent base income. In addition, the Debtor earns income as a professional coach and through real estate sales and consulting activities. These income streams, together with the Debtor's anticipated return to seasonal employment with Delta Air Lines once medically cleared, will provide the ongoing cash flow necessary to fund payments under this Plan.

Because the Property is not the Debtor's principal residence, the secured claim of PHH Mortgage Service will be restructured pursuant to Class 1 of this Plan. Under that treatment, the Debtor will make monthly payments of Two Thousand Six Hundred Ninety-Six Dollars and Seventy-Seven Cents ($2,696.77) on a ten year term, amortized over thirty years at a fixed annual rate of 3.375 percent, with a ballon payment of the remaining balance, estimated at approximately Four Hundred Ninety-Six Thousand Eight Hundred Eighty-Nine Dollars and Eighty-Seven Cents ($496,889.87), due on or before the tenth anniversary of the Effective Date. The Debtor reserves the right, upon maturity of the term, to satisfy the ballon payment using any commercially reasonable method she deems appropriate, including refinancing or other strategic financial alternatives, and will begin pursing refinancing no later than Year 9 of the Plan, providing PHH Mortgage Service with not less than ninety days' written notice prior to payoff. These repayment terms are set forth in full in Article 4 of this Plan (Class 1 – PHH Mortgage Service) and are further illustrated in the Amortization Schedule.

Subsequent to the filing of this case, but prior to confirmation of this Plan, a fire occurred in the basement area of the Property, rendering the residential space temporarily unrentable while repairs are being undertaken. The Debtor has submitted a claim under the existing insurance policy and intends to pursue that claim to conclusion. Any insurance proceeds paid on account of the loss, to the extent of the Debtor's interest therein, constitute property of the estate and, to the extent such proceeds are subject to the lien of PHH Mortgage Service or any other party, shall be treated as cash collateral and used only in accordance with this Plan. The Debtor will devote such proceeds primarily to completing all repairs necessary to restore the basement and any other affected areas of the Property to a rentable condition in order to preserve and enhance the value of the collateral for the benefit of creditors.

Within the first three months following the Effective Date, and in coordination with the fire-related repair work, the Debtor shall deploy funds obtained from a wholly owned limited liability company, whether by loan or member distribution, to facilitate previously planned renovations to the main floor of the Property. These renovations may be performed wholly or partially by the tenant under the existing basement lease, whose construction services will be credited against the tenant's rental arrears, thereby reducing overall project costs. The Debtor shall use commercially reasonable efforts to complete the fire-related repairs and main-floor renovations promptly so as to align with implementation of this Plan and the commencement or resumption of rental revenue.

Once the Property has been restored to rentable condition and reoccupied, all net operating income derived from it, after deducting taxes, insurance, utilities, and other regular expenses, shall be applied toward obligations under this Plan, including the monthly payment due to PHH Mortgage Service. During any interim period in which the Property is not generating rental income due to the casualty and repairs, or if a shortfall arises in the early phases of Plan performance, the Debtor may draw upon her salary, her income from coaching and real estate activities, or additional resources from the limited liability company to maintain timely payments under this Plan to the greatest extent possible. The Debtor further reserves all rights to pursue back rent or damages from any tenant or subtenant who has failed to meet their obligations, with any recoveries to be deposited into a segregated account and distributed in accordance with the classification and priority provisions set forth in this Plan.

The Financial Projections are structured around the income sources and implementation

measures detailed in this Article. They demonstrate the Debtor's ability to satisfy all obligations under this Plan through a combination of stable employment income, revenue from coaching and real estate activities, and net rental proceeds. The projections account for the temporary interruption in rental income resulting from the post-petition fire affecting the basement area of the Property and assume its restoration to rentable condition using insurance proceeds. To the extent rental income is reduced during the repair period, the projections reflect the Debtor's capacity to offset such shortfalls through alternative income and resources identified herein. Collectively, these projections and the underlying measures provide a practical and reliable framework for the full and timely execution of this Plan.

**Article 8.     General Provisions**

**Section 8.01   Definitions and Rules of Construction.** The definitions and rules of construction set forth in Section 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

**Section 8.02   Effective Date.** The effective date of this Plan shall be the first business day following the date that is fourteen (14) days after entry of the confirmation order. If a stay of the confirmation order is in effect on that date, the effective date shall be the first business day after the stay expires or is otherwise terminated. All payments and obligations required to be made under this Plan shall commence or become effective on or after the effective date, except as otherwise specifically provided herein.

**Section 8.03   Severability.** If any provision in this Plan is determined to be unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provision of this Plan.

**Section 8.04   Binding Effect.** The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors, assigns and/or receiver(s) of such entity.

**Section 8.05   Default.** Should there occur a default under this Plan, creditors shall retain all rights provided under the Bankruptcy Code, including those set forth in Section 1112 (e.g., the right to bring a motion to convert the case to one under Chapter 7), as well as the right to seek recourse for breach of contract and such other remedies as the Court may deem just and proper in its equitable capacity. These rights shall also vest in any party in interest with standing under Article III of the United States Constitution. A default shall be deemed to occur if the Debtor fails to make any payments provided for under this Plan in the full amount required and does not cure such failure within thirty (30) days of written notice by a party in interest. If the Debtor fails to cure within that period, the affected creditor may file a Notice of Termination of the Automatic Stay with the Court and serve a copy on the Debtor and her counsel. Unless the Debtor files a written objection within fourteen (14) days of service, the automatic stay under Section 362 of the Bankruptcy Code shall be deemed terminated as to the notifying creditor without further order of the Court, and that creditor may thereafter exercise its rights and remedies under applicable law. If the Debtor timely objects, the stay shall remain in effect pending the Court's resolution of the objection. A default shall also be deemed to occur if the Debtor materially breaches or violates any other substantive provision of this Plan and fails to cure such breach within thirty (30) days after written notice thereof. Nothing in this Section shall limit the Debtor's right to seek appropriate relief from the

Court upon good cause shown, or shall it limit any creditor's right to pursue other remedies available by law or under this Plan.

**Section 8.06  Disbursing Agent.** Except as otherwise expressly provided herein, there shall be no separate disbursing agent hereunder, and the Debtor shall make all distributions directly to creditors by check or, where available, via direct deposit or automatic debit.

**Section 8.07  Captions.** The headings and section titles contained in this Plan are for reference and convenience only and shall not affect the meaning, interpretation, or construction of any provision herein.

**Section 8.08  Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the District of Columbia shall govern this Plan and any agreements, instruments, or documents executed in connection with in, expect as otherwise provided herein or as necessary to implement its provisions.

**Section 8.09  Escheat.** If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with this Plan to the holder entitled thereto, such unclaimed property shall be forfeited by such holder. Unclaimed property shall be (i) first paid to other members of the same class until such class is paid in full; (ii) second paid to each junior class until all classes are paid in full; and (iii) then, if and when all classes are paid in full, any remaining funds may be donated in equal parts to the Howard University Law Clinic and Capital Temple Ministries, consistent with the missions of those organizations and subject to approval by the Court. The portion directed to the Howard University Law Clinic shall be administered in a charitable manner consistent with the Clinic's mission, with emphasis on supporting the Estate Planning and Heirs Property Clinic, the Fair Housing Clinic, and the Civil Rights Clinic.

**Section 8.10  Retention of Jurisdiction.** The United States Bankruptcy Court for the District of Columbia shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

**Section 8.11  Modifications.** The Debtor may, with approval of the Bankruptcy Court and without further notice to holders of claims or interests, correct any non-material defect, omission, or inconsistency of this Plan in such manner and to such extent as may be necessary or desirable. The Debtor may also amend this Plan in any manner that renders the terms hereof more favorable to

creditors, with the approval of the Bankruptcy Court and without notice to holders of claims.

**Section 8.12    Professional Fees.** Pursuant to Section 3.02 of this Plan, the Debtor shall obtain Court approval prior to paying any professional fees incurred during the pendency of the case. Commencing on the Effective Date, however, the Debtor shall be free to pay any post-confirmation fees incurred by the Subchapter V Trustee, legal counsel, or other professionals without further Court approval, and such professionals shall thereafter be excused from any requirement to seek fee authorization from the Court.

**Article 9.    Discharge**

**Section 9.01    Discharge.** The Court shall grant the Debtor a discharge pursuant to 11 U.S.C. § 1192 of all debts that arose prior to the Petition Date in this case, except any debt (1) on which the last payment is due after the first five (5) years of the Plan; and (2) debts of the kind specified in Section 523(a) of the Bankruptcy Code.

(a) If the Plan is confirmed as a consensual plan under 11 U.S.C. § 1191, the Debtor shall receive a discharge on the Effective Date of the Plan; or

(b) If the Plan is confirmed as a non-consensual plan under 11 U.S.C. § 1191(b), the Bankruptcy Court shall grant a discharge upon the completion of all payments due within the term of this Plan, including payment due to secured creditors whose obligations extend beyond the initial term of the Plan.

**Section 9.02    Effect of Discharge.** The discharge shall operate as an injunction under 11 U.S.C. § 524(a) against the commencement or continuation of any action, the employment of process, or any act to collect, recover, or offset any dischargeable debt as a personal liability of the Debtor. The discharge shall be effective as to all creditors and parties in interest that received notice of this bankruptcy case and were sent a copy of this Plan, together with their respective members, managers, insiders, shareholders, officers, directors, trustees and receivers, to the extent they act or seek to act on account of any discharged debt.

**Article 10.    Retention of Certain Assets; Notice of Substantial Consummation**

**Section 10.01** Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, all litigation claims (including, but not limited to, rights arising under Chapter 5 of the Bankruptcy Code) shall remain an asset of the Debtor's bankruptcy estate—and shall, accordingly, remain subject to the protections of Section 362(c)(1) of the Bankruptcy Code until the case is closed, dismissed, or converted, or until entry of the discharge, whichever occurs first, and which time any remaining interests shall revest in the Debtor.

**Section 10.02** If the Plan is confirmed under 11 U.S.C. § 1191(a), the Debtor shall file a Notice of Substantial Consummation not later than fourteen (14) days after the Plan is substantially consummated per 11 U.S.C. § 1183(c)(2). The Plan shall be deemed substantially consummated upon commencement of Plan payments and satisfaction of all condition's precedent to its effectiveness.

Respectfully Submitted,

/s/ Christianna A. Cathcart
Christianna A. Cathcart, Esq.
Bar No.: ND10008
THE BELMONT FIRM
1050 Connecticut Avenue NW
Suite 500
Washington, DC 20036
christianna@dcbankruptcy.com
*Counsel for the Debtor*