**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Maria Denise Reddick aka Maria "BeBe" Reddick dba BeBe Realty |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | District of   District of Columbia (State) |
| Case number | 24-00393-ELG |

<u>Official Form 410</u>

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:   Identify the Claim

| | | |
|---|---|---|
| 1. | Who is the current creditor? | Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities Trust 2007-4, Mortgage Loan Asset-Backed Certificates, Series 2007-4 |
| | | Name of the current creditor (the person or the entity to be paid for this claim) |
| | | Other names the creditor used with the debtor PHH Mortgage Corporation |

| | | |
|---|---|---|
| 2. | Has this claim been acquired from someone else? | ☒ No |
| | | ☐ Yes.  From whom? |

| | | | |
|---|---|---|---|
| 3. | Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payment to the creditor be sent? (if different) |
| | | PHH Mortgage Corporation | PHH Mortgage Service |
| | | Name | Name |
| | Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Attn: Bankruptcy Department | ATTN: SBRP |
| | | PO Box 24605 | PO Box 24781 |
| | | Number        Street | Number        Street |
| | | West Palm Beach        FL        33416-4605 | West Palm Beach        FL        33416 |
| | | City        State        Zip Code | City        State        Zip Code |
| | | Contact phone   (855) 689-7367 | Contact phone   SpeedPay - (800) 750-2518 |
| | | Contact email   BKTrusteeQueries@onitygroup.com | Contact email   BKTrusteeQueries@onitygroup.com |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

| | | |
|---|---|---|
| 4. | Does this claim amend one already filed? | ☒ No |
| | | ☐ Yes.  Claim number on court claims registry (if known)_____        Filed on ___/___/_____  MM / DD / YYYY |

| | | |
|---|---|---|
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☒ No |
| | | ☐ Yes.  Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6.** Do you have any number you use to identify the debtor?

☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor.     ******1044

**7.** How much is the claim?     $ 880,619.40     Does this amount include interest or other charges?

☐ No
☒ Yes.   Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9.** Is all or part of the claim secured?

☐ No
☒ Yes.   The claim is secured by a lien on property.

Nature of property:

☒ Real estate  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe     4012 14Th Street Northwest, Washington, DC 20011

Basis for perfection:    Mortgage/Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for Example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:     $ _____

Amount of the claim that is secured  $   880,619.40

Amount of the claim that is unsecured:     $ _____

(The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:     $   272,357.26

Annual Interest Rate (when case was filed)     3.37500     %
☒ Fixed
☐ Variable

**10.** Is this claim based on a lease?

☒ No
☐ Yes.  Amount necessary to cure any default as of the date of the petition.     $ _____

**11.** Is this claim subject to a right of setoff?

☒ No
☐ Yes.  Identify the property _____

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check all that apply:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                    $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).        $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).        $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).        $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).        $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.        $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

| **Part 3:** | **Sign Below** |

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorized courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  –  __1/28/2025_____
                            MM  /  DD  /  YYYY

/s/ Samantha Werner
_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Samantha Werner |
| | First Name        Middle Name        Last Name |

| Title | Agent for Creditor |

| Company | Aldridge Pite, LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 3333 Camino del Rio South, Suite 225 |
| | Number        Street |
| | San Diego CA 92108 |
| | City        State        ZIP Code |

| Contact phone | (858) 750-7600 | Email | swerner@aldridgepite.com |

**Mortgage Proof of Claim Attachment**                                                                                  **(12/23)**

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | Part 3: Arrearage as of Date of the Petition | Part 4: Monthly Mortgage Payment |
|---|---|---|---|
| Case number: 24-00393-ELG | Principal balance: 506,596.58 | Principal due: 59,173.76 | Principal & interest: 1,956.26 |
| | Deferred Principal: 155,497.55 | | |
| Debtor 1: Maria Denise Reddick aka Maria "BeBe" Reddick dba BeBe Realty | Interest due: 139,142.46 | Interest due: 130,583.46 | Monthly escrow: 849.41 |
| Debtor 2: | Fees, costs due: 13,513.60 | Prepetition fees due: 13,513.60 | Private mortgage insurance: 0.00 |
| Last 4 digits to identify: 1044 | Escrow deficiency for funds advanced: 65,869.21 | Escrow deficiency for funds advanced: 65,869.21 | Optional insurance: |
| Creditor: Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities Trust 2007-4, Mortgage Loan Asset-Backed Certificates, Series 2007-4 | Less total funds on hand: -0.00 | Projected escrow shortage: 3,217.23 | Total monthly payment: 2,805.67 |
| Servicer: PHH Mortgage Corporation | Total debt: 880,619.40 | Less funds on hand: -0.00 | Annual interest rate: 3.37500 |
| Fixed accrual/daily simple interest/other: Fixed Accrual | | Total prepetition arrearage: 272,357.26 | |

**Part 5: Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| | See attached | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

Mortgage Proof of Claim Attachment  _____  (12/23)

**Part 5: Loan Payment History from First Date of Default**

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/18/2015 | | | | Open Bal BK File DT | 7/1/2015 | $0.00 | | | | | $0.00 | $514,901.49 | $0.00 | $744.35 | $0.00 | $0.00 |
| 6/18/2015 | | $2,530.48 | | Payment Applied | 8/1/2015 | $0.00 | $508.10 | $1,448.16 | $574.22 | | $0.00 | $514,393.39 | $0.00 | $1,318.57 | $0.00 | $0.00 |
| 7/1/2015 | $2,530.48 | | | Payment Due | 8/1/2015 | $0.00 | | | | | $0.00 | $514,393.39 | $0.00 | $1,318.57 | $0.00 | $0.00 |
| 8/1/2015 | $2,530.48 | | | Payment Due | 8/1/2015 | $2,530.48 | | | | | $0.00 | $514,393.39 | $0.00 | $1,318.57 | $0.00 | $0.00 |
| 8/16/2015 | | $2,530.48 | | Payment Applied | 9/1/2015 | $0.00 | $509.53 | $1,446.73 | $574.22 | | $0.00 | $513,883.86 | $0.00 | $1,892.79 | $0.00 | $0.00 |
| 8/27/2015 | | | $1,945.56 | County Tax Advance | 9/1/2015 | $0.00 | | | | $1,945.56 | $0.00 | $513,883.86 | $0.00 | -$52.77 | $0.00 | $0.00 |
| 9/1/2015 | $2,530.48 | | | Payment Due | 9/1/2015 | $2,530.48 | | | | | $0.00 | $513,883.86 | $0.00 | -$52.77 | $0.00 | $0.00 |
| 9/30/2015 | | $2,530.48 | | Payment Applied | 10/1/2015 | $0.00 | $510.97 | $1,445.29 | $574.22 | | $0.00 | $513,372.89 | $0.00 | $521.45 | $0.00 | $0.00 |
| 10/1/2015 | $2,530.48 | | | Payment Due | 10/1/2015 | $2,530.48 | | | | | $0.00 | $513,372.89 | $0.00 | $521.45 | $0.00 | $0.00 |
| 10/9/2015 | | $2,530.48 | | Payment Applied | 11/1/2015 | $0.00 | $512.40 | $1,443.86 | $574.22 | | $0.00 | $512,860.49 | $0.00 | $1,095.67 | $0.00 | $0.00 |
| 11/1/2015 | $2,530.48 | | | Payment Due | 11/1/2015 | $2,530.48 | | | | | $0.00 | $512,860.49 | $0.00 | $1,095.67 | $0.00 | $0.00 |
| 11/30/2015 | | $2,530.48 | | Payment Applied | 12/1/2015 | $0.00 | $513.84 | $1,442.42 | $574.22 | | $0.00 | $512,346.65 | $0.00 | $1,669.89 | $0.00 | $0.00 |
| 12/1/2015 | $2,530.48 | | | Payment Due | 12/1/2015 | $2,530.48 | | | | | $0.00 | $512,346.65 | $0.00 | $1,669.89 | $0.00 | $0.00 |
| 12/22/2015 | | $2,530.48 | | Payment Applied | 1/1/2016 | $0.00 | $515.29 | $1,440.97 | $574.22 | | $0.00 | $511,831.36 | $0.00 | $2,244.11 | $0.00 | $0.00 |
| 1/1/2016 | $2,530.48 | | | Payment Due | 1/1/2016 | $2,530.48 | | | | | $0.00 | $511,831.36 | $0.00 | $2,244.11 | $0.00 | $0.00 |
| 1/5/2016 | | | $3,184.00 | Insurance Advance | 1/1/2016 | $2,530.48 | | | | $3,184.00 | $0.00 | $511,831.36 | $0.00 | -$939.89 | $0.00 | $0.00 |
| 1/30/2016 | | $2,530.48 | | Payment Applied | 2/1/2016 | $0.00 | $516.74 | $1,439.52 | $574.22 | | $0.00 | $511,314.62 | $0.00 | -$365.67 | $0.00 | $0.00 |
| 2/1/2016 | $2,530.48 | | | Payment Due | 2/1/2016 | $2,530.48 | | | | | $0.00 | $511,314.62 | $0.00 | -$365.67 | $0.00 | $0.00 |
| 2/28/2016 | | $2,530.48 | | Payment Applied | 3/1/2016 | $0.00 | $518.19 | $1,438.07 | $574.22 | | $0.00 | $510,796.43 | $0.00 | $208.55 | $0.00 | $0.00 |
| 3/1/2016 | $2,530.48 | | | Payment Due | 3/1/2016 | $2,530.48 | | | | | $0.00 | $510,796.43 | $0.00 | $208.55 | $0.00 | $0.00 |
| 3/21/2016 | | | $2,065.75 | County Tax Advance | 3/1/2016 | $2,530.48 | | | | $2,065.75 | $0.00 | $510,796.43 | $0.00 | -$1,857.20 | $0.00 | $0.00 |
| 3/31/2016 | | $2,530.48 | | Payment Applied | 4/1/2016 | $0.00 | $519.65 | $1,436.61 | $574.22 | | $0.00 | $510,276.78 | $0.00 | -$1,282.98 | $0.00 | $0.00 |
| 4/1/2016 | $2,530.48 | | | Payment Due | 4/1/2016 | $2,530.48 | | | | | $0.00 | $510,276.78 | $0.00 | -$1,282.98 | $0.00 | $0.00 |
| 4/29/2016 | | $2,530.48 | | Payment Applied | 5/1/2016 | $0.00 | $521.11 | $1,435.15 | $574.22 | | $0.00 | $509,755.67 | $0.00 | -$708.76 | $0.00 | $0.00 |
| 5/1/2016 | $2,601.85 | | | Payment Due | 5/1/2016 | $2,601.85 | | | | | $0.00 | $509,755.67 | $0.00 | -$708.76 | $0.00 | $0.00 |
| 5/28/2016 | | $2,601.85 | | Payment Applied | 6/1/2016 | $0.00 | $522.58 | $1,433.68 | $645.59 | | $0.00 | $509,233.09 | $0.00 | -$63.17 | $0.00 | $0.00 |
| 6/1/2016 | $2,626.57 | | | Payment Due | 6/1/2016 | $2,626.57 | | | | | $0.00 | $509,233.09 | $0.00 | -$63.17 | $0.00 | $0.00 |
| 6/30/2016 | | $2,444.57 | | Payment Applied | 7/1/2016 | $0.00 | $524.05 | $1,432.21 | $670.31 | | $0.00 | $508,709.04 | $0.00 | $607.14 | $0.00 | $0.00 |
| 7/1/2016 | $2,626.57 | | | Payment Due | 7/1/2016 | $2,626.57 | | | | | $0.00 | $508,709.04 | $0.00 | $607.14 | $0.00 | $0.00 |
| 7/31/2016 | | $2,626.57 | | Payment Applied | 8/1/2016 | $0.00 | $525.52 | $1,430.74 | $670.31 | | $0.00 | $508,183.52 | $0.00 | $1,277.45 | $0.00 | $0.00 |
| 8/1/2016 | $2,626.57 | | | Payment Due | 8/1/2016 | $2,626.57 | | | | | $0.00 | $508,183.52 | $0.00 | $1,277.45 | $0.00 | $0.00 |
| 8/31/2016 | | $2,626.57 | | Payment Applied | 9/1/2016 | $0.00 | $527.00 | $1,429.26 | $670.31 | | $0.00 | $507,656.52 | $0.00 | $1,947.76 | $0.00 | $0.00 |
| 8/31/2016 | | | $2,065.75 | County Tax Advance | 9/1/2016 | $0.00 | | | | $2,065.75 | $0.00 | $507,656.52 | $0.00 | -$117.99 | $0.00 | $0.00 |
| 9/1/2016 | $2,626.57 | | | Payment Due | 9/1/2016 | $2,626.57 | | | | | $0.00 | $507,656.52 | $0.00 | -$117.99 | $0.00 | $0.00 |
| 9/30/2016 | | $2,626.57 | | Payment Applied | 10/1/2016 | $0.00 | $528.48 | $1,427.78 | $670.31 | | $0.00 | $507,128.04 | $0.00 | $552.32 | $0.00 | $0.00 |
| 10/1/2016 | $2,626.57 | | | Payment Due | 10/1/2016 | $2,626.57 | | | | | $0.00 | $507,128.04 | $0.00 | $552.32 | $0.00 | $0.00 |
| 10/31/2016 | | $2,626.57 | | Payment Applied | 11/1/2016 | $0.00 | $529.97 | $1,426.29 | $670.31 | | $0.00 | $506,598.07 | $0.00 | $1,222.63 | $0.00 | $0.00 |
| 11/1/2016 | $2,626.57 | | | Payment Due | 11/1/2016 | $2,626.57 | | | | | $0.00 | $506,598.07 | $0.00 | $1,222.63 | $0.00 | $0.00 |
| 11/7/2016 | | -$2,626.57 | | Reversal | 10/1/2016 | $5,253.14 | -$529.97 | -$1,426.29 | -$670.31 | | $0.00 | $507,128.04 | $0.00 | $552.32 | $0.00 | $0.00 |
| 11/8/2016 | | $2,626.57 | | Payment Applied | 11/1/2016 | $2,626.57 | $529.97 | $1,426.29 | $670.31 | | $0.00 | $506,598.07 | $0.00 | $1,222.63 | $0.00 | $0.00 |
| 11/23/2016 | | | $633.27 | Insurance Advance | 11/1/2016 | $2,626.57 | | | | $633.27 | $0.00 | $506,598.07 | $0.00 | $589.36 | $0.00 | $0.00 |
| 12/1/2016 | $2,626.57 | | | Payment Due | 11/1/2016 | $5,253.14 | | | | | $0.00 | $506,598.07 | $0.00 | $589.36 | $0.00 | $0.00 |
| 12/1/2016 | | $2,666.57 | | Payment Applied | 12/1/2016 | $2,626.57 | $531.46 | $1,424.80 | $670.31 | | $0.00 | $506,066.61 | $0.00 | $1,259.67 | $0.00 | $0.00 |
| 12/7/2016 | | -$2,626.57 | | Reversal | 11/1/2016 | $5,253.14 | -$529.97 | -$1,426.29 | -$670.31 | | $0.00 | $506,596.58 | $0.00 | $589.36 | $0.00 | $0.00 |
| 12/20/2016 | | | $13.25 | Property Inspection Fee | 11/1/2016 | $5,253.14 | | | | $13.25 | $0.00 | $506,596.58 | $0.00 | $589.36 | $13.25 | $0.00 |

Mortgage Proof of Claim Attachment_ _____ (12/23)

**Part 5: Loan Payment History from First Date of Default**

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | Balance After Amount Received or Incurred | | | | | | |
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/1/2017 | $2,626.57 | | | Payment Due | 11/1/2016 | $7,879.71 | | | | | $0.00 | $506,596.58 | $0.00 | $589.36 | $13.25 | $0.00 |
| 1/4/2017 | | | $211.09 | Insurance Advance | 11/1/2016 | $7,879.71 | | | $211.09 | | $0.00 | $506,596.58 | $0.00 | $378.27 | $13.25 | $0.00 |
| 1/25/2017 | | | $77.00 | BPO | 11/1/2016 | $7,879.71 | | | | $77.00 | $0.00 | $506,596.58 | $0.00 | $378.27 | $90.25 | $0.00 |
| 1/26/2017 | | | $13.25 | Property Inspection Fee | 11/1/2016 | $7,879.71 | | | | $13.25 | $0.00 | $506,596.58 | $0.00 | $378.27 | $103.50 | $0.00 |
| 2/1/2017 | $2,626.57 | | | Payment Due | 11/1/2016 | $10,506.28 | | | | | $0.00 | $506,596.58 | $0.00 | $378.27 | $103.50 | $0.00 |
| 2/1/2017 | | | $211.09 | Insurance Advance | 11/1/2016 | $10,506.28 | | | $211.09 | | $0.00 | $506,596.58 | $0.00 | $167.18 | $103.50 | $0.00 |
| 3/1/2017 | $2,626.57 | | | Payment Due | 11/1/2016 | $13,132.85 | | | | | $0.00 | $506,596.58 | $0.00 | $167.18 | $103.50 | $0.00 |
| 3/1/2017 | | | $211.09 | Insurance Advance | 11/1/2016 | $13,132.85 | | | $211.09 | | $0.00 | $506,596.58 | $0.00 | -$43.91 | $103.50 | $0.00 |
| 3/7/2017 | | | $13.25 | Property Inspection Fee | 11/1/2016 | $13,132.85 | | | | $13.25 | $0.00 | $506,596.58 | $0.00 | -$43.91 | $116.75 | $0.00 |
| 3/17/2017 | | | $2,289.43 | County Tax Advance | 11/1/2016 | $13,132.85 | | | $2,289.43 | | $0.00 | $506,596.58 | $0.00 | -$2,333.34 | $116.75 | $0.00 |
| 4/1/2017 | $2,626.57 | | | Payment Due | 11/1/2016 | $15,759.42 | | | | | $0.00 | $506,596.58 | $0.00 | -$2,333.34 | $116.75 | $0.00 |
| 4/3/2017 | | | $211.09 | Insurance Advance | 11/1/2016 | $15,759.42 | | | $211.09 | | $0.00 | $506,596.58 | $0.00 | -$2,544.43 | $116.75 | $0.00 |
| 4/25/2017 | | | $295.00 | Title Cost | 11/1/2016 | $15,759.42 | | | | $295.00 | $0.00 | $506,596.58 | $0.00 | -$2,544.43 | $411.75 | $0.00 |
| 5/1/2017 | | | $810.00 | Trustees Fee | 11/1/2016 | $15,759.42 | | | | $810.00 | $0.00 | $506,596.58 | $0.00 | -$2,544.43 | $1,221.75 | $0.00 |
| 5/1/2017 | $2,626.57 | | | Payment Due | 11/1/2016 | $18,385.99 | | | | | $0.00 | $506,596.58 | $0.00 | -$2,544.43 | $1,221.75 | $0.00 |
| 5/2/2017 | | | $211.09 | Insurance Advance | 11/1/2016 | $18,385.99 | | | $211.09 | | $0.00 | $506,596.58 | $0.00 | -$2,755.52 | $1,221.75 | $0.00 |
| 6/1/2017 | $2,530.27 | | | Payment Due | 11/1/2016 | $20,916.26 | | | | | $0.00 | $506,596.58 | $0.00 | -$2,755.52 | $1,221.75 | $0.00 |
| 6/1/2017 | | | $211.09 | Insurance Advance | 11/1/2016 | $20,916.26 | | | $211.09 | | $0.00 | $506,596.58 | $0.00 | -$2,966.61 | $1,221.75 | $0.00 |
| 6/9/2017 | | | $0.46 | FC Mail Cost | 11/1/2016 | $20,916.26 | | | | $0.46 | $0.00 | $506,596.58 | $0.00 | -$2,966.61 | $1,222.21 | $0.00 |
| 6/9/2017 | | | $31.50 | Recording Fee | 11/1/2016 | $20,916.26 | | | | $31.50 | $0.00 | $506,596.58 | $0.00 | -$2,966.61 | $1,253.71 | $0.00 |
| 7/1/2017 | $2,530.27 | | | Payment Due | 11/1/2016 | $23,446.53 | | | | | $0.00 | $506,596.58 | $0.00 | -$2,966.61 | $1,253.71 | $0.00 |
| 7/3/2017 | | | $211.09 | Insurance Advance | 11/1/2016 | $23,446.53 | | | $211.09 | | $0.00 | $506,596.58 | $0.00 | -$3,177.70 | $1,253.71 | $0.00 |
| 8/1/2017 | $2,530.27 | | | Payment Due | 11/1/2016 | $25,976.80 | | | | | $0.00 | $506,596.58 | $0.00 | -$3,177.70 | $1,253.71 | $0.00 |
| 8/1/2017 | | | $211.09 | Insurance Advance | 11/1/2016 | $25,976.80 | | | $211.09 | | $0.00 | $506,596.58 | $0.00 | -$3,388.79 | $1,253.71 | $0.00 |
| 9/1/2017 | $2,530.27 | | | Payment Due | 11/1/2016 | $28,507.07 | | | | | $0.00 | $506,596.58 | $0.00 | -$3,388.79 | $1,253.71 | $0.00 |
| 9/1/2017 | | | $211.01 | Insurance Advance | 11/1/2016 | $28,507.07 | | | $211.01 | | $0.00 | $506,596.58 | $0.00 | -$3,599.80 | $1,253.71 | $0.00 |
| 9/5/2017 | | | $2,289.43 | County Tax Advance | 11/1/2016 | $28,507.07 | | | $2,289.43 | | $0.00 | $506,596.58 | $0.00 | -$5,889.23 | $1,253.71 | $0.00 |
| 10/1/2017 | $2,530.27 | | | Payment Due | 11/1/2016 | $31,037.34 | | | | | $0.00 | $506,596.58 | $0.00 | -$5,889.23 | $1,253.71 | $0.00 |
| 10/6/2017 | | | $214.92 | Insurance Advance | 11/1/2016 | $31,037.34 | | | $214.92 | | $0.00 | $506,596.58 | $0.00 | -$6,104.15 | $1,253.71 | $0.00 |
| 11/1/2017 | $2,530.27 | | | Payment Due | 11/1/2016 | $33,567.61 | | | | | $0.00 | $506,596.58 | $0.00 | -$6,104.15 | $1,253.71 | $0.00 |
| 11/1/2017 | | | $214.92 | Insurance Advance | 11/1/2016 | $33,567.61 | | | $214.92 | | $0.00 | $506,596.58 | $0.00 | -$6,319.07 | $1,253.71 | $0.00 |
| 12/1/2017 | $2,530.27 | | | Payment Due | 11/1/2016 | $36,097.88 | | | | | $0.00 | $506,596.58 | $0.00 | -$6,319.07 | $1,253.71 | $0.00 |
| 12/1/2017 | | | $214.92 | Insurance Advance | 11/1/2016 | $36,097.88 | | | $214.92 | | $0.00 | $506,596.58 | $0.00 | -$6,533.99 | $1,253.71 | $0.00 |
| 1/1/2018 | $2,530.27 | | | Payment Due | 11/1/2016 | $38,628.15 | | | | | $0.00 | $506,596.58 | $0.00 | -$6,533.99 | $1,253.71 | $0.00 |
| 1/3/2018 | | | $214.92 | Insurance Advance | 11/1/2016 | $38,628.15 | | | $214.92 | | $0.00 | $506,596.58 | $0.00 | -$6,748.91 | $1,253.71 | $0.00 |
| 2/1/2018 | $2,530.27 | | | Payment Due | 11/1/2016 | $41,158.42 | | | | | $0.00 | $506,596.58 | $0.00 | -$6,748.91 | $1,253.71 | $0.00 |
| 2/1/2018 | | | $214.92 | Insurance Advance | 11/1/2016 | $41,158.42 | | | $214.92 | | $0.00 | $506,596.58 | $0.00 | -$6,963.83 | $1,253.71 | $0.00 |
| 2/20/2018 | | | $110.00 | BPO | 11/1/2016 | $41,158.42 | | | | $110.00 | $0.00 | $506,596.58 | $0.00 | -$6,963.83 | $1,363.71 | $0.00 |
| 3/1/2018 | $2,530.27 | | | Payment Due | 11/1/2016 | $43,688.69 | | | | | $0.00 | $506,596.58 | $0.00 | -$6,963.83 | $1,363.71 | $0.00 |
| 3/1/2018 | | | $214.92 | Insurance Advance | 11/1/2016 | $43,688.69 | | | $214.92 | | $0.00 | $506,596.58 | $0.00 | -$7,178.75 | $1,363.71 | $0.00 |
| 3/19/2018 | | | $2,370.39 | County Tax Advance | 11/1/2016 | $43,688.69 | | | $2,370.39 | | $0.00 | $506,596.58 | $0.00 | -$9,549.14 | $1,363.71 | $0.00 |
| 4/1/2018 | $2,530.27 | | | Payment Due | 11/1/2016 | $46,218.96 | | | | | $0.00 | $506,596.58 | $0.00 | -$9,549.14 | $1,363.71 | $0.00 |
| 4/3/2018 | | | $214.92 | Insurance Advance | 11/1/2016 | $46,218.96 | | | $214.92 | | $0.00 | $506,596.58 | $0.00 | -$9,764.06 | $1,363.71 | $0.00 |
| 5/1/2018 | $2,530.27 | | | Payment Due | 11/1/2016 | $48,749.23 | | | | | $0.00 | $506,596.58 | $0.00 | -$9,764.06 | $1,363.71 | $0.00 |
| 5/1/2018 | | | $214.92 | Insurance Advance | 11/1/2016 | $48,749.23 | | | $214.92 | | $0.00 | $506,596.58 | $0.00 | -$9,978.98 | $1,363.71 | $0.00 |

Mortgage Proof of Claim Attachment _____ (12/23)

**Part 5: Loan Payment History from First Date of Default**

| | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 6/1/2018 | $2,579.76 | | | Payment Due | 11/1/2018 | $51,328.99 | | | | | $0.00 | $506,596.58 | $0.00 | -$9,978.98 | $1,363.71 | $0.00 |
| 6/1/2018 | | | $214.92 | Insurance Advance | 11/1/2018 | $51,328.99 | | | $214.92 | | $0.00 | $506,596.58 | $0.00 | -$10,193.90 | $1,363.71 | $0.00 |
| 7/1/2018 | $2,579.76 | | | Payment Due | 11/1/2018 | $53,908.75 | | | | | $0.00 | $506,596.58 | $0.00 | -$10,193.90 | $1,363.71 | $0.00 |
| 7/3/2018 | | | $214.92 | Insurance Advance | 11/1/2018 | $53,908.75 | | | $214.92 | | $0.00 | $506,596.58 | $0.00 | -$10,408.82 | $1,363.71 | $0.00 |
| 8/1/2018 | $2,579.76 | | | Payment Due | 11/1/2018 | $56,488.51 | | | | | $0.00 | $506,596.58 | $0.00 | -$10,408.82 | $1,363.71 | $0.00 |
| 8/1/2018 | | | $214.92 | Insurance Advance | 11/1/2018 | $56,488.51 | | | $214.92 | | $0.00 | $506,596.58 | $0.00 | -$10,623.74 | $1,363.71 | $0.00 |
| 9/1/2018 | $2,579.76 | | | Payment Due | 11/1/2018 | $59,068.27 | | | | | $0.00 | $506,596.58 | $0.00 | -$10,623.74 | $1,363.71 | $0.00 |
| 9/4/2018 | | | $214.88 | Insurance Advance | 11/1/2018 | $59,068.27 | | | $214.88 | | $0.00 | $506,596.58 | $0.00 | -$10,838.62 | $1,363.71 | $0.00 |
| 9/5/2018 | | | $2,370.39 | County Tax Advance | 11/1/2018 | $59,068.27 | | | $2,370.39 | | $0.00 | $506,596.58 | $0.00 | -$13,209.01 | $1,363.71 | $0.00 |
| 10/1/2018 | $2,579.76 | | | Payment Due | 11/1/2018 | $61,648.03 | | | | | $0.00 | $506,596.58 | $0.00 | -$13,209.01 | $1,363.71 | $0.00 |
| 10/5/2018 | | | $224.25 | Insurance Advance | 11/1/2018 | $61,648.03 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$13,433.26 | $1,363.71 | $0.00 |
| 11/1/2018 | $2,579.76 | | | Payment Due | 11/1/2018 | $64,227.79 | | | | | $0.00 | $506,596.58 | $0.00 | -$13,433.26 | $1,363.71 | $0.00 |
| 11/1/2018 | | | $224.25 | Insurance Advance | 11/1/2018 | $64,227.79 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$13,657.51 | $1,363.71 | $0.00 |
| 12/1/2018 | $2,579.76 | | | Payment Due | 11/1/2018 | $66,807.55 | | | | | $0.00 | $506,596.58 | $0.00 | -$13,657.51 | $1,363.71 | $0.00 |
| 12/3/2018 | | | $224.25 | Insurance Advance | 11/1/2018 | $66,807.55 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$13,881.76 | $1,363.71 | $0.00 |
| 1/1/2019 | $2,579.76 | | | Payment Due | 11/1/2018 | $69,387.31 | | | | | $0.00 | $506,596.58 | $0.00 | -$13,881.76 | $1,363.71 | $0.00 |
| 1/2/2019 | | | $224.25 | Insurance Advance | 11/1/2018 | $69,387.31 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$14,106.01 | $1,363.71 | $0.00 |
| 2/1/2019 | $2,579.76 | | | Payment Due | 11/1/2018 | $71,967.07 | | | | | $0.00 | $506,596.58 | $0.00 | -$14,106.01 | $1,363.71 | $0.00 |
| 2/1/2019 | | | $224.25 | Insurance Advance | 11/1/2018 | $71,967.07 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$14,330.26 | $1,363.71 | $0.00 |
| 3/1/2019 | $2,579.76 | | | Payment Due | 11/1/2018 | $74,546.83 | | | | | $0.00 | $506,596.58 | $0.00 | -$14,330.26 | $1,363.71 | $0.00 |
| 3/1/2019 | | | $224.25 | Insurance Advance | 11/1/2018 | $74,546.83 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$14,554.51 | $1,363.71 | $0.00 |
| 3/12/2019 | | | $14.50 | Property Inspection Fee | 11/1/2018 | $74,546.83 | | | | $14.50 | $0.00 | $506,596.58 | $0.00 | -$14,554.51 | $1,378.21 | $0.00 |
| 3/18/2019 | | | $2,522.80 | County Tax Advance | 11/1/2018 | $74,546.83 | | | $2,522.80 | | $0.00 | $506,596.58 | $0.00 | -$17,077.31 | $1,378.21 | $0.00 |
| 4/1/2019 | $2,579.76 | | | Payment Due | 11/1/2018 | $77,126.59 | | | | | $0.00 | $506,596.58 | $0.00 | -$17,077.31 | $1,378.21 | $0.00 |
| 4/2/2019 | | | $224.25 | Insurance Advance | 11/1/2018 | $77,126.59 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$17,301.56 | $1,378.21 | $0.00 |
| 4/3/2019 | | | $14.50 | Property Inspection Fee | 11/1/2018 | $77,126.59 | | | | $14.50 | $0.00 | $506,596.58 | $0.00 | -$17,301.56 | $1,392.71 | $0.00 |
| 4/30/2019 | | | $139.38 | Filing Fee | 11/1/2018 | $77,126.59 | | | | $139.38 | $0.00 | $506,596.58 | $0.00 | -$17,301.56 | $1,532.09 | $0.00 |
| 4/30/2019 | | | $540.00 | FC Fees | 11/1/2018 | $77,126.59 | | | | $540.00 | $0.00 | $506,596.58 | $0.00 | -$17,301.56 | $2,072.09 | $0.00 |
| 5/1/2019 | $2,579.76 | | | Payment Due | 11/1/2018 | $79,706.35 | | | | | $0.00 | $506,596.58 | $0.00 | -$17,301.56 | $2,072.09 | $0.00 |
| 5/1/2019 | | | $224.25 | Insurance Advance | 11/1/2018 | $79,706.35 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$17,525.81 | $2,072.09 | $0.00 |
| 5/20/2019 | | | $2.00 | Insurance Credit | 11/1/2018 | $79,706.35 | | | $2.00 | | $0.00 | $506,596.58 | $0.00 | -$17,523.81 | $2,072.09 | $0.00 |
| 5/28/2019 | | | $14.50 | Property Inspection Fee | 11/1/2018 | $79,706.35 | | | | $14.50 | $0.00 | $506,596.58 | $0.00 | -$17,523.81 | $2,086.59 | $0.00 |
| 5/31/2019 | | | $31.50 | Recording Fee | 11/1/2018 | $79,706.35 | | | | $31.50 | $0.00 | $506,596.58 | $0.00 | -$17,523.81 | $2,118.09 | $0.00 |
| 6/1/2019 | $2,624.71 | | | Payment Due | 11/1/2018 | $82,331.06 | | | | | $0.00 | $506,596.58 | $0.00 | -$17,523.81 | $2,118.09 | $0.00 |
| 6/25/2019 | | | $14.50 | Property Inspection Fee | 11/1/2018 | $82,331.06 | | | | $14.50 | $0.00 | $506,596.58 | $0.00 | -$17,523.81 | $2,132.59 | $0.00 |
| 7/1/2019 | $2,624.71 | | | Payment Due | 11/1/2018 | $84,955.77 | | | | | $0.00 | $506,596.58 | $0.00 | -$17,523.81 | $2,132.59 | $0.00 |
| 7/24/2019 | | | $14.50 | Property Inspection Fee | 11/1/2018 | $84,955.77 | | | | $14.50 | $0.00 | $506,596.58 | $0.00 | -$17,523.81 | $2,147.09 | $0.00 |
| 8/1/2019 | $2,624.71 | | | Payment Due | 11/1/2018 | $87,580.48 | | | | | $0.00 | $506,596.58 | $0.00 | -$17,523.81 | $2,147.09 | $0.00 |
| 8/9/2019 | | | $1.30 | FC Mail Cost | 11/1/2018 | $87,580.48 | | | | $1.30 | $0.00 | $506,596.58 | $0.00 | -$17,523.81 | $2,148.39 | $0.00 |
| 8/9/2019 | | | $36.88 | Filing Fee | 11/1/2018 | $87,580.48 | | | | $36.88 | $0.00 | $506,596.58 | $0.00 | -$17,523.81 | $2,185.27 | $0.00 |
| 8/9/2019 | | | $250.00 | FC Fees | 11/1/2018 | $87,580.48 | | | | $250.00 | $0.00 | $506,596.58 | $0.00 | -$17,523.81 | $2,435.27 | $0.00 |
| 8/19/2019 | | | $15.00 | Property Inspection Fee | 11/1/2018 | $87,580.48 | | | | $15.00 | $0.00 | $506,596.58 | $0.00 | -$17,523.81 | $2,450.27 | $0.00 |
| 8/20/2019 | | | $897.00 | Hazard Insurance Advance | 11/1/2018 | $87,580.48 | | | $897.00 | | $0.00 | $506,596.58 | $0.00 | -$18,420.81 | $2,450.27 | $0.00 |
| 8/28/2019 | | | $2,522.80 | City Tax Advance | 11/1/2018 | $87,580.48 | | | $2,522.80 | | $0.00 | $506,596.58 | $0.00 | -$20,943.61 | $2,450.27 | $0.00 |
| 9/1/2019 | $2,624.71 | | | Payment Due | 11/1/2018 | $90,205.19 | | | | | $0.00 | $506,596.58 | $0.00 | -$20,943.61 | $2,450.27 | $0.00 |

Mortgage Proof of Claim Attachment                                                                                                           (12/23)

**Part 5: Loan Payment History from First Date of Default**

| | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 9/24/2019 | | | $15.00 | Property Inspection Fee | 11/1/2016 | $90,205.19 | | | | $15.00 | $0.00 | $506,596.58 | $0.00 | -$20,943.61 | $2,465.27 | $0.00 |
| 10/1/2019 | $2,624.71 | | | Payment Due | 11/1/2016 | $92,829.90 | | | | | $0.00 | $506,596.58 | $0.00 | -$20,943.61 | $2,465.27 | $0.00 |
| 10/7/2019 | | | $224.25 | Hazard Insurance Advance | 11/1/2016 | $92,829.90 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$21,167.86 | $2,465.27 | $0.00 |
| 10/14/2019 | | | $15.00 | Property Inspection Fee | 11/1/2016 | $92,829.90 | | | | $15.00 | $0.00 | $506,596.58 | $0.00 | -$21,167.86 | $2,480.27 | $0.00 |
| 11/1/2019 | $2,675.45 | | | Payment Due | 11/1/2016 | $95,505.35 | | | | | $0.00 | $506,596.58 | $0.00 | -$21,167.86 | $2,480.27 | $0.00 |
| 11/6/2019 | | | $224.25 | Hazard Insurance Advance | 11/1/2016 | $95,505.35 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$21,392.11 | $2,480.27 | $0.00 |
| 11/13/2019 | | | $15.00 | Property Inspection Fee | 11/1/2016 | $95,505.35 | | | | $15.00 | $0.00 | $506,596.58 | $0.00 | -$21,392.11 | $2,495.27 | $0.00 |
| 11/18/2019 | | | $36.88 | Filing Fee | 11/1/2016 | $95,505.35 | | | | $36.88 | $0.00 | $506,596.58 | $0.00 | -$21,392.11 | $2,532.15 | $0.00 |
| 11/18/2019 | | | $10.80 | FC Mail Cost | 11/1/2016 | $95,505.35 | | | | $10.80 | $0.00 | $506,596.58 | $0.00 | -$21,392.11 | $2,542.95 | $0.00 |
| 11/18/2019 | | | $250.00 | FC Fees | 11/1/2016 | $95,505.35 | | | | $250.00 | $0.00 | $506,596.58 | $0.00 | -$21,392.11 | $2,792.95 | $0.00 |
| 11/25/2019 | | | $800.00 | Process Fee | 11/1/2016 | $95,505.35 | | | | $800.00 | $0.00 | $506,596.58 | $0.00 | -$21,392.11 | $3,592.95 | $0.00 |
| 12/1/2019 | $2,675.45 | | | Payment Due | 11/1/2016 | $98,180.80 | | | | | $0.00 | $506,596.58 | $0.00 | -$21,392.11 | $3,592.95 | $0.00 |
| 12/5/2019 | | | $224.25 | Hazard Insurance Advance | 11/1/2016 | $98,180.80 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$21,616.36 | $3,592.95 | $0.00 |
| 12/17/2019 | | | $15.00 | Property Inspection Fee | 11/1/2016 | $98,180.80 | | | | $15.00 | $0.00 | $506,596.58 | $0.00 | -$21,616.36 | $3,607.95 | $0.00 |
| 1/1/2020 | $2,675.45 | | | Payment Due | 11/1/2016 | $100,856.25 | | | | | $0.00 | $506,596.58 | $0.00 | -$21,616.36 | $3,607.95 | $0.00 |
| 1/6/2020 | | | $224.25 | Hazard Insurance Advance | 11/1/2016 | $100,856.25 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$21,840.61 | $3,607.95 | $0.00 |
| 1/7/2020 | | | $250.00 | Appearance Fee | 11/1/2016 | $100,856.25 | | | | $250.00 | $0.00 | $506,596.58 | $0.00 | -$21,840.61 | $3,857.95 | $0.00 |
| 1/17/2020 | | | $15.00 | Property Inspection Fee | 11/1/2016 | $100,856.25 | | | | $15.00 | $0.00 | $506,596.58 | $0.00 | -$21,840.61 | $3,872.95 | $0.00 |
| 1/31/2020 | | | $71.00 | FC Mail Cost | 11/1/2016 | $100,856.25 | | | | $71.00 | $0.00 | $506,596.58 | $0.00 | -$21,840.61 | $3,943.95 | $0.00 |
| 1/31/2020 | | | $541.26 | Publication Fee | 11/1/2016 | $100,856.25 | | | | $541.26 | $0.00 | $506,596.58 | $0.00 | -$21,840.61 | $4,485.21 | $0.00 |
| 1/31/2020 | | | $16.38 | Court Costs | 11/1/2016 | $100,856.25 | | | | $16.38 | $0.00 | $506,596.58 | $0.00 | -$21,840.61 | $4,501.59 | $0.00 |
| 1/31/2020 | | | $16.38 | Filing Fee | 11/1/2016 | $100,856.25 | | | | $16.38 | $0.00 | $506,596.58 | $0.00 | -$21,840.61 | $4,517.97 | $0.00 |
| 1/31/2020 | | | $87.50 | FC Fees | 11/1/2016 | $100,856.25 | | | | $87.50 | $0.00 | $506,596.58 | $0.00 | -$21,840.61 | $4,605.47 | $0.00 |
| 1/31/2020 | | | $575.00 | FC Fees | 11/1/2016 | $100,856.25 | | | | $575.00 | $0.00 | $506,596.58 | $0.00 | -$21,840.61 | $5,180.47 | $0.00 |
| 2/1/2020 | $2,675.45 | | | Payment Due | 11/1/2016 | $103,531.70 | | | | | $0.00 | $506,596.58 | $0.00 | -$21,840.61 | $5,180.47 | $0.00 |
| 2/5/2020 | | | $224.25 | Hazard Insurance Advance | 11/1/2016 | $103,531.70 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$22,064.86 | $5,180.47 | $0.00 |
| 2/12/2020 | | | $15.00 | Property Inspection Fee | 11/1/2016 | $103,531.70 | | | | $15.00 | $0.00 | $506,596.58 | $0.00 | -$22,064.86 | $5,195.47 | $0.00 |
| 3/1/2020 | $2,675.45 | | | Payment Due | 11/1/2016 | $106,207.15 | | | | | $0.00 | $506,596.58 | $0.00 | -$22,064.86 | $5,195.47 | $0.00 |
| 3/5/2020 | | | $250.00 | Appearance Fee | 11/1/2016 | $106,207.15 | | | | $250.00 | $0.00 | $506,596.58 | $0.00 | -$22,064.86 | $5,445.47 | $0.00 |
| 3/5/2020 | | | $224.25 | Hazard Insurance Advance | 11/1/2016 | $106,207.15 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$22,289.11 | $5,445.47 | $0.00 |
| 3/17/2020 | | | $2,620.89 | City Tax Advance | 11/1/2016 | $106,207.15 | | | $2,620.89 | | $0.00 | $506,596.58 | $0.00 | -$24,910.00 | $5,445.47 | $0.00 |
| 4/1/2020 | $2,675.45 | | | Payment Due | 11/1/2016 | $108,882.60 | | | | | $0.00 | $506,596.58 | $0.00 | -$24,910.00 | $5,445.47 | $0.00 |
| 4/2/2020 | | | $224.25 | Hazard Insurance Advance | 11/1/2016 | $108,882.60 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$25,134.25 | $5,445.47 | $0.00 |
| 4/13/2020 | | | $36.88 | Filing Fee | 11/1/2016 | $108,882.60 | | | | $36.88 | $0.00 | $506,596.58 | $0.00 | -$25,134.25 | $5,482.35 | $0.00 |
| 4/13/2020 | | | $16.38 | Filing Fee | 11/1/2016 | $108,882.60 | | | | $16.38 | $0.00 | $506,596.58 | $0.00 | -$25,134.25 | $5,498.73 | $0.00 |
| 4/13/2020 | | | $5.75 | FC Mail Cost | 11/1/2016 | $108,882.60 | | | | $5.75 | $0.00 | $506,596.58 | $0.00 | -$25,134.25 | $5,504.48 | $0.00 |
| 4/13/2020 | | | $250.00 | Appearance Fee | 11/1/2016 | $108,882.60 | | | | $250.00 | $0.00 | $506,596.58 | $0.00 | -$25,134.25 | $5,754.48 | $0.00 |
| 5/1/2020 | $2,675.45 | | | Payment Due | 11/1/2016 | $111,558.05 | | | | | $0.00 | $506,596.58 | $0.00 | -$25,134.25 | $5,754.48 | $0.00 |
| 5/5/2020 | | | $224.25 | Hazard Insurance Advance | 11/1/2016 | $111,558.05 | | | $224.25 | | $0.00 | $506,596.58 | $0.00 | -$25,358.50 | $5,754.48 | $0.00 |
| 6/1/2020 | $2,675.45 | | | Payment Due | 11/1/2016 | $114,233.50 | | | | | $0.00 | $506,596.58 | $0.00 | -$25,358.50 | $5,754.48 | $0.00 |
| 6/5/2020 | | | $242.92 | Hazard Insurance Advance | 11/1/2016 | $114,233.50 | | | $242.92 | | $0.00 | $506,596.58 | $0.00 | -$25,601.42 | $5,754.48 | $0.00 |
| 7/1/2020 | $2,675.45 | | | Payment Due | 11/1/2016 | $116,908.95 | | | | | $0.00 | $506,596.58 | $0.00 | -$25,601.42 | $5,754.48 | $0.00 |
| 7/2/2020 | | | $242.92 | Hazard Insurance Advance | 11/1/2016 | $116,908.95 | | | $242.92 | | $0.00 | $506,596.58 | $0.00 | -$25,844.34 | $5,754.48 | $0.00 |
| 8/1/2020 | $2,675.45 | | | Payment Due | 11/1/2016 | $119,584.40 | | | | | $0.00 | $506,596.58 | $0.00 | -$25,844.34 | $5,754.48 | $0.00 |
| 8/5/2020 | | | $242.92 | Hazard Insurance Advance | 11/1/2016 | $119,584.40 | | | $242.92 | | $0.00 | $506,596.58 | $0.00 | -$26,087.26 | $5,754.48 | $0.00 |

**Mortgage Proof of Claim Attachment** _____ **(12/23)**

**Part 5: Loan Payment History from First Date of Default**

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/1/2020 | $2,675.45 | | | Payment Due | 11/1/2016 | $122,259.85 | | | | | $0.00 | $506,596.58 | $0.00 | -$26,087.26 | $5,754.48 | $0.00 |
| 9/1/2020 | | | $2,620.89 | City Tax Advance | 11/1/2016 | $122,259.85 | | | $2,620.89 | | $0.00 | $506,596.58 | $0.00 | -$28,708.15 | $5,754.48 | $0.00 |
| 9/3/2020 | | | $242.92 | Hazard Insurance Advance | 11/1/2016 | $122,259.85 | | | $242.92 | | $0.00 | $506,596.58 | $0.00 | -$28,951.07 | $5,754.48 | $0.00 |
| 10/1/2020 | $2,653.58 | | | Payment Due | 11/1/2016 | $124,913.43 | | | | | $0.00 | $506,596.58 | $0.00 | -$28,951.07 | $5,754.48 | $0.00 |
| 10/13/2020 | | | $242.92 | Hazard Insurance Advance | 11/1/2016 | $124,913.43 | | | $242.92 | | $0.00 | $506,596.58 | $0.00 | -$29,193.99 | $5,754.48 | $0.00 |
| 11/1/2020 | $2,653.58 | | | Payment Due | 11/1/2016 | $127,567.01 | | | | | $0.00 | $506,596.58 | $0.00 | -$29,193.99 | $5,754.48 | $0.00 |
| 11/10/2020 | | | $242.92 | Hazard Insurance Advance | 11/1/2016 | $127,567.01 | | | $242.92 | | $0.00 | $506,596.58 | $0.00 | -$29,436.91 | $5,754.48 | $0.00 |
| 12/1/2020 | $2,653.58 | | | Payment Due | 11/1/2016 | $130,220.59 | | | | | $0.00 | $506,596.58 | $0.00 | -$29,436.91 | $5,754.48 | $0.00 |
| 12/4/2020 | | | $242.92 | Hazard Insurance Advance | 11/1/2016 | $130,220.59 | | | $242.92 | | $0.00 | $506,596.58 | $0.00 | -$29,679.83 | $5,754.48 | $0.00 |
| 1/1/2021 | $2,653.58 | | | Payment Due | 11/1/2016 | $132,874.17 | | | | | $0.00 | $506,596.58 | $0.00 | -$29,679.83 | $5,754.48 | $0.00 |
| 1/5/2021 | | | $242.92 | Hazard Insurance Advance | 11/1/2016 | $132,874.17 | | | $242.92 | | $0.00 | $506,596.58 | $0.00 | -$29,922.75 | $5,754.48 | $0.00 |
| 2/1/2021 | $2,653.58 | | | Payment Due | 11/1/2016 | $135,527.75 | | | | | $0.00 | $506,596.58 | $0.00 | -$29,922.75 | $5,754.48 | $0.00 |
| 2/9/2021 | | | $242.92 | Hazard Insurance Advance | 11/1/2016 | $135,527.75 | | | $242.92 | | $0.00 | $506,596.58 | $0.00 | -$30,165.67 | $5,754.48 | $0.00 |
| 3/1/2021 | $2,653.58 | | | Payment Due | 11/1/2016 | $138,181.33 | | | | | $0.00 | $506,596.58 | $0.00 | -$30,165.67 | $5,754.48 | $0.00 |
| 3/3/2021 | | | $242.92 | Hazard Insurance Advance | 11/1/2016 | $138,181.33 | | | $242.92 | | $0.00 | $506,596.58 | $0.00 | -$30,408.59 | $5,754.48 | $0.00 |
| 3/19/2021 | | | $2,708.91 | City Tax Advance | 11/1/2016 | $138,181.33 | | | $2,708.91 | | $0.00 | $506,596.58 | $0.00 | -$33,117.50 | $5,754.48 | $0.00 |
| 4/1/2021 | $2,653.58 | | | Payment Due | 11/1/2016 | $140,834.91 | | | | | $0.00 | $506,596.58 | $0.00 | -$33,117.50 | $5,754.48 | $0.00 |
| 4/2/2021 | | | $242.92 | Hazard Insurance Advance | 11/1/2016 | $140,834.91 | | | $242.92 | | $0.00 | $506,596.58 | $0.00 | -$33,360.42 | $5,754.48 | $0.00 |
| 5/1/2021 | $2,661.72 | | | Payment Due | 11/1/2016 | $143,496.63 | | | | | $0.00 | $506,596.58 | $0.00 | -$33,360.42 | $5,754.48 | $0.00 |
| 5/7/2021 | | | $242.88 | Hazard Insurance Advance | 11/1/2016 | $143,496.63 | | | $242.88 | | $0.00 | $506,596.58 | $0.00 | -$33,603.30 | $5,754.48 | $0.00 |
| 6/1/2021 | $2,661.72 | | | Payment Due | 11/1/2016 | $146,158.35 | | | | | $0.00 | $506,596.58 | $0.00 | -$33,603.30 | $5,754.48 | $0.00 |
| 6/9/2021 | | | $246.42 | Hazard Insurance Advance | 11/1/2016 | $146,158.35 | | | $246.42 | | $0.00 | $506,596.58 | $0.00 | -$33,849.72 | $5,754.48 | $0.00 |
| 7/1/2021 | $2,661.72 | | | Payment Due | 11/1/2016 | $148,820.07 | | | | | $0.00 | $506,596.58 | $0.00 | -$33,849.72 | $5,754.48 | $0.00 |
| 7/2/2021 | | | $246.42 | Hazard Insurance Advance | 11/1/2016 | $148,820.07 | | | $246.42 | | $0.00 | $506,596.58 | $0.00 | -$34,096.14 | $5,754.48 | $0.00 |
| 8/1/2021 | $2,675.23 | | | Payment Due | 11/1/2016 | $151,495.30 | | | | | $0.00 | $506,596.58 | $0.00 | -$34,096.14 | $5,754.48 | $0.00 |
| 8/4/2021 | | | $246.42 | Hazard Insurance Advance | 11/1/2016 | $151,495.30 | | | $246.42 | | $0.00 | $506,596.58 | $0.00 | -$34,342.56 | $5,754.48 | $0.00 |
| 9/1/2021 | $2,675.23 | | | Payment Due | 11/1/2016 | $154,170.53 | | | | | $0.00 | $506,596.58 | $0.00 | -$34,342.56 | $5,754.48 | $0.00 |
| 9/3/2021 | | | $2,708.91 | City Tax Advance | 11/1/2016 | $154,170.53 | | | $2,708.91 | | $0.00 | $506,596.58 | $0.00 | -$37,051.47 | $5,754.48 | $0.00 |
| 9/3/2021 | | | $246.42 | Hazard Insurance Advance | 11/1/2016 | $154,170.53 | | | $246.42 | | $0.00 | $506,596.58 | $0.00 | -$37,297.89 | $5,754.48 | $0.00 |
| 10/1/2021 | $2,675.23 | | | Payment Due | 11/1/2016 | $156,845.76 | | | | | $0.00 | $506,596.58 | $0.00 | -$37,297.89 | $5,754.48 | $0.00 |
| 10/5/2021 | | | $246.42 | Hazard Insurance Advance | 11/1/2016 | $156,845.76 | | | $246.42 | | $0.00 | $506,596.58 | $0.00 | -$37,544.31 | $5,754.48 | $0.00 |
| 11/1/2021 | $2,675.23 | | | Payment Due | 11/1/2016 | $159,520.99 | | | | | $0.00 | $506,596.58 | $0.00 | -$37,544.31 | $5,754.48 | $0.00 |
| 11/5/2021 | | | $246.42 | Hazard Insurance Advance | 11/1/2016 | $159,520.99 | | | $246.42 | | $0.00 | $506,596.58 | $0.00 | -$37,790.73 | $5,754.48 | $0.00 |
| 12/1/2021 | $2,675.23 | | | Payment Due | 11/1/2016 | $162,196.22 | | | | | $0.00 | $506,596.58 | $0.00 | -$37,790.73 | $5,754.48 | $0.00 |
| 12/3/2021 | | | $246.42 | Hazard Insurance Advance | 11/1/2016 | $162,196.22 | | | $246.42 | | $0.00 | $506,596.58 | $0.00 | -$38,037.15 | $5,754.48 | $0.00 |
| 12/16/2021 | | | $15.00 | Property Inspection Fee | 11/1/2016 | $162,196.22 | | | | $15.00 | $0.00 | $506,596.58 | $0.00 | -$38,037.15 | $5,769.48 | $0.00 |
| 12/22/2021 | | | $85.00 | AVM | 11/1/2016 | $162,196.22 | | | | $85.00 | $0.00 | $506,596.58 | $0.00 | -$38,037.15 | $5,854.48 | $0.00 |
| 1/1/2022 | $2,675.23 | | | Payment Due | 11/1/2016 | $164,871.45 | | | | | $0.00 | $506,596.58 | $0.00 | -$38,037.15 | $5,854.48 | $0.00 |
| 1/4/2022 | | | $246.42 | Hazard Insurance Advance | 11/1/2016 | $164,871.45 | | | $246.42 | | $0.00 | $506,596.58 | $0.00 | -$38,283.57 | $5,854.48 | $0.00 |
| 1/24/2022 | | | $15.00 | Property Inspection Fee | 11/1/2016 | $164,871.45 | | | | $15.00 | $0.00 | $506,596.58 | $0.00 | -$38,283.57 | $5,869.48 | $0.00 |
| 2/1/2022 | $2,679.98 | | | Payment Due | 11/1/2016 | $167,551.43 | | | | | $0.00 | $506,596.58 | $0.00 | -$38,283.57 | $5,869.48 | $0.00 |
| 2/2/2022 | | | $246.42 | Hazard Insurance Advance | 11/1/2016 | $167,551.43 | | | $246.42 | | $0.00 | $506,596.58 | $0.00 | -$38,529.99 | $5,869.48 | $0.00 |
| 2/3/2022 | | | $0.53 | FC Mail Cost | 11/1/2016 | $167,551.43 | | | | $0.53 | $0.00 | $506,596.58 | $0.00 | -$38,529.99 | $5,870.01 | $0.00 |
| 2/3/2022 | | | $16.38 | Court Costs | 11/1/2016 | $167,551.43 | | | | $16.38 | $0.00 | $506,596.58 | $0.00 | -$38,529.99 | $5,886.39 | $0.00 |
| 2/3/2022 | | | $16.38 | Court Costs | 11/1/2016 | $167,551.43 | | | | $16.38 | $0.00 | $506,596.58 | $0.00 | -$38,529.99 | $5,902.77 | $0.00 |

Mortgage Proof of Claim Attachment _____ (12/23)

**Part 5: Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 2/3/2022 | | | $250.00 | FC Fees | 11/1/2016 | $167,551.43 | | | | $250.00 | $0.00 | $506,596.58 | $0.00 | -$38,529.99 | $6,152.77 | $0.00 |
| 2/14/2022 | | | $57.60 | Door Locks | 11/1/2016 | $167,551.43 | | | | $57.60 | $0.00 | $506,596.58 | $0.00 | -$38,529.99 | $6,210.37 | $0.00 |
| 2/14/2022 | | | $35.00 | Lock Box | 11/1/2016 | $167,551.43 | | | | $35.00 | $0.00 | $506,596.58 | $0.00 | -$38,529.99 | $6,245.37 | $0.00 |
| 2/18/2022 | | | $250.00 | Prop Preservation | 11/1/2016 | $167,551.43 | | | | $250.00 | $0.00 | $506,596.58 | $0.00 | -$38,529.99 | $6,495.37 | $0.00 |
| 2/18/2022 | | | $62.50 | Vac Prop Fee | 11/1/2016 | $167,551.43 | | | | $62.50 | $0.00 | $506,596.58 | $0.00 | -$38,529.99 | $6,557.87 | $0.00 |
| 2/23/2022 | | | $15.00 | Property Inspection Fee | 11/1/2016 | $167,551.43 | | | | $15.00 | $0.00 | $506,596.58 | $0.00 | -$38,529.99 | $6,572.87 | $0.00 |
| 3/1/2022 | $2,679.98 | | | Payment Due | 11/1/2016 | $170,231.41 | | | | | $0.00 | $506,596.58 | $0.00 | -$38,529.99 | $6,572.87 | $0.00 |
| 3/3/2022 | | | $246.42 | Hazard Insurance Advance | 11/1/2016 | $170,231.41 | | | $246.42 | | $0.00 | $506,596.58 | $0.00 | -$38,776.41 | $6,572.87 | $0.00 |
| 3/17/2022 | | | $2,778.61 | City Tax Advance | 11/1/2016 | $170,231.41 | | | $2,778.61 | | $0.00 | $506,596.58 | $0.00 | -$41,555.02 | $6,572.87 | $0.00 |
| 4/1/2022 | $2,679.98 | | | Payment Due | 11/1/2016 | $172,911.39 | | | | | $0.00 | $506,596.58 | $0.00 | -$41,555.02 | $6,572.87 | $0.00 |
| 4/4/2022 | | | $246.42 | Hazard Insurance Advance | 11/1/2016 | $172,911.39 | | | $246.42 | | $0.00 | $506,596.58 | $0.00 | -$41,801.44 | $6,572.87 | $0.00 |
| 5/1/2022 | $2,679.98 | | | Payment Due | 11/1/2016 | $175,591.37 | | | | | $0.00 | $506,596.58 | $0.00 | -$41,801.44 | $6,572.87 | $0.00 |
| 5/4/2022 | | | $246.38 | Hazard Insurance Advance | 11/1/2016 | $175,591.37 | | | $246.38 | | $0.00 | $506,596.58 | $0.00 | -$42,047.82 | $6,572.87 | $0.00 |
| 6/1/2022 | $2,679.98 | | | Payment Due | 11/1/2016 | $178,271.35 | | | | | $0.00 | $506,596.58 | $0.00 | -$42,047.82 | $6,572.87 | $0.00 |
| 6/8/2022 | | | $267.75 | Hazard Insurance Advance | 11/1/2016 | $178,271.35 | | | $267.75 | | $0.00 | $506,596.58 | $0.00 | -$42,315.57 | $6,572.87 | $0.00 |
| 7/1/2022 | $2,679.98 | | | Payment Due | 11/1/2016 | $180,951.33 | | | | | $0.00 | $506,596.58 | $0.00 | -$42,315.57 | $6,572.87 | $0.00 |
| 7/5/2022 | | | $267.75 | Hazard Insurance Advance | 11/1/2016 | $180,951.33 | | | $267.75 | | $0.00 | $506,596.58 | $0.00 | -$42,583.32 | $6,572.87 | $0.00 |
| 8/1/2022 | $2,679.98 | | | Payment Due | 11/1/2016 | $183,631.31 | | | | | $0.00 | $506,596.58 | $0.00 | -$42,583.32 | $6,572.87 | $0.00 |
| 8/3/2022 | | | $267.75 | Hazard Insurance Advance | 11/1/2016 | $183,631.31 | | | $267.75 | | $0.00 | $506,596.58 | $0.00 | -$42,851.07 | $6,572.87 | $0.00 |
| 8/22/2022 | | | $16.38 | Court Costs | 11/1/2016 | $183,631.31 | | | | $16.38 | $0.00 | $506,596.58 | $0.00 | -$42,851.07 | $6,589.25 | $0.00 |
| 8/24/2022 | | | $250.00 | FC Fees | 11/1/2016 | $183,631.31 | | | | $250.00 | $0.00 | $506,596.58 | $0.00 | -$42,851.07 | $6,839.25 | $0.00 |
| 9/1/2022 | $2,679.98 | | | Payment Due | 11/1/2016 | $186,311.29 | | | | | $0.00 | $506,596.58 | $0.00 | -$42,851.07 | $6,839.25 | $0.00 |
| 9/1/2022 | | | $2,778.61 | City Tax Advance | 11/1/2016 | $186,311.29 | | | $2,778.61 | | $0.00 | $506,596.58 | $0.00 | -$45,629.68 | $6,839.25 | $0.00 |
| 9/2/2022 | | | $267.75 | Hazard Insurance Advance | 11/1/2016 | $186,311.29 | | | $267.75 | | $0.00 | $506,596.58 | $0.00 | -$45,897.43 | $6,839.25 | $0.00 |
| 10/1/2022 | $2,679.98 | | | Payment Due | 11/1/2016 | $188,991.27 | | | | | $0.00 | $506,596.58 | $0.00 | -$45,897.43 | $6,839.25 | $0.00 |
| 10/4/2022 | | | $267.75 | Hazard Insurance Advance | 11/1/2016 | $188,991.27 | | | $267.75 | | $0.00 | $506,596.58 | $0.00 | -$46,165.18 | $6,839.25 | $0.00 |
| 11/1/2022 | $2,679.98 | | | Payment Due | 11/1/2016 | $191,671.25 | | | | | $0.00 | $506,596.58 | $0.00 | -$46,165.18 | $6,839.25 | $0.00 |
| 11/2/2022 | | | $267.75 | Hazard Insurance Advance | 11/1/2016 | $191,671.25 | | | $267.75 | | $0.00 | $506,596.58 | $0.00 | -$46,432.93 | $6,839.25 | $0.00 |
| 12/1/2022 | $2,679.98 | | | Payment Due | 11/1/2016 | $194,351.23 | | | | | $0.00 | $506,596.58 | $0.00 | -$46,432.93 | $6,839.25 | $0.00 |
| 12/2/2022 | | | $267.75 | Hazard Insurance Advance | 11/1/2016 | $194,351.23 | | | $267.75 | | $0.00 | $506,596.58 | $0.00 | -$46,700.68 | $6,839.25 | $0.00 |
| 1/1/2023 | $2,679.98 | | | Payment Due | 11/1/2016 | $197,031.21 | | | | | $0.00 | $506,596.58 | $0.00 | -$46,700.68 | $6,839.25 | $0.00 |
| 1/4/2023 | | | $267.75 | Hazard Insurance Advance | 11/1/2016 | $197,031.21 | | | $267.75 | | $0.00 | $506,596.58 | $0.00 | -$46,968.43 | $6,839.25 | $0.00 |
| 2/1/2023 | $2,723.27 | | | Payment Due | 11/1/2016 | $199,754.48 | | | | | $0.00 | $506,596.58 | $0.00 | -$46,968.43 | $6,839.25 | $0.00 |
| 2/2/2023 | | | $267.75 | Hazard Insurance Advance | 11/1/2016 | $199,754.48 | | | $267.75 | | $0.00 | $506,596.58 | $0.00 | -$47,236.18 | $6,839.25 | $0.00 |
| 2/10/2023 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $199,754.48 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$47,236.18 | $6,864.25 | $0.00 |
| 3/1/2023 | $2,723.27 | | | Payment Due | 11/1/2016 | $202,477.75 | | | | | $0.00 | $506,596.58 | $0.00 | -$47,236.18 | $6,864.25 | $0.00 |
| 3/2/2023 | | | $267.75 | Hazard Insurance Advance | 11/1/2016 | $202,477.75 | | | $267.75 | | $0.00 | $506,596.58 | $0.00 | -$47,503.93 | $6,864.25 | $0.00 |
| 3/13/2023 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $202,477.75 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$47,503.93 | $6,889.25 | $0.00 |
| 3/17/2023 | | | $2,974.71 | City Tax Advance | 11/1/2016 | $202,477.75 | | | $2,974.71 | | $0.00 | $506,596.58 | $0.00 | -$50,478.64 | $6,889.25 | $0.00 |
| 3/27/2023 | | | $325.00 | FC Fees | 11/1/2016 | $202,477.75 | | | | $325.00 | $0.00 | $506,596.58 | $0.00 | -$50,478.64 | $7,214.25 | $0.00 |
| 4/1/2023 | $2,723.27 | | | Payment Due | 11/1/2016 | $205,201.02 | | | | | $0.00 | $506,596.58 | $0.00 | -$50,478.64 | $7,214.25 | $0.00 |
| 4/4/2023 | | | $267.75 | Hazard Insurance Advance | 11/1/2016 | $205,201.02 | | | $267.75 | | $0.00 | $506,596.58 | $0.00 | -$50,746.39 | $7,214.25 | $0.00 |
| 4/7/2023 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $205,201.02 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$50,746.39 | $7,239.25 | $0.00 |
| 5/1/2023 | $2,723.27 | | | Payment Due | 11/1/2016 | $207,924.29 | | | | | $0.00 | $506,596.58 | $0.00 | -$50,746.39 | $7,239.25 | $0.00 |
| 5/3/2023 | | | $267.75 | Hazard Insurance Advance | 11/1/2016 | $207,924.29 | | | $267.75 | | $0.00 | $506,596.58 | $0.00 | -$51,014.14 | $7,239.25 | $0.00 |

**Part 5: Loan Payment History from First Date of Default**

| | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** Date | **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |
| 5/11/2023 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $207,924.29 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$51,014.14 | $7,264.25 | $0.00 |
| 5/16/2023 | | | $85.00 | AVM | 11/1/2016 | $207,924.29 | | | | $85.00 | $0.00 | $506,596.58 | $0.00 | -$51,014.14 | $7,349.25 | $0.00 |
| 6/1/2023 | $2,742.54 | | | Payment Due | 11/1/2016 | $210,666.83 | | | | | $0.00 | $506,596.58 | $0.00 | -$51,014.14 | $7,349.25 | $0.00 |
| 6/7/2023 | | | $312.25 | Hazard Insurance Advance | 11/1/2016 | $210,666.83 | | | $312.25 | | $0.00 | $506,596.58 | $0.00 | -$51,326.39 | $7,349.25 | $0.00 |
| 6/12/2023 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $210,666.83 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$51,326.39 | $7,374.25 | $0.00 |
| 7/1/2023 | $2,742.54 | | | Payment Due | 11/1/2016 | $213,409.37 | | | | | $0.00 | $506,596.58 | $0.00 | -$51,326.39 | $7,374.25 | $0.00 |
| 7/5/2023 | | | $312.25 | Hazard Insurance Advance | 11/1/2016 | $213,409.37 | | | $312.25 | | $0.00 | $506,596.58 | $0.00 | -$51,638.64 | $7,374.25 | $0.00 |
| 7/13/2023 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $213,409.37 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$51,638.64 | $7,399.25 | $0.00 |
| 8/1/2023 | $2,742.54 | | | Payment Due | 11/1/2016 | $216,151.91 | | | | | $0.00 | $506,596.58 | $0.00 | -$51,638.64 | $7,399.25 | $0.00 |
| 8/2/2023 | | | $312.25 | Hazard Insurance Advance | 11/1/2016 | $216,151.91 | | | $312.25 | | $0.00 | $506,596.58 | $0.00 | -$51,950.89 | $7,399.25 | $0.00 |
| 8/28/2023 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $216,151.91 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$51,950.89 | $7,424.25 | $0.00 |
| 8/29/2023 | | | $2,974.71 | City Tax Advance | 11/1/2016 | $216,151.91 | | | $2,974.71 | | $0.00 | $506,596.58 | $0.00 | -$54,925.60 | $7,424.25 | $0.00 |
| 9/1/2023 | $2,742.54 | | | Payment Due | 11/1/2016 | $218,894.45 | | | | | $0.00 | $506,596.58 | $0.00 | -$54,925.60 | $7,424.25 | $0.00 |
| 9/5/2023 | | | $325.00 | FC Fees | 11/1/2016 | $218,894.45 | | | | $325.00 | $0.00 | $506,596.58 | $0.00 | -$54,925.60 | $7,749.25 | $0.00 |
| 9/5/2023 | | | $312.25 | Hazard Insurance Advance | 11/1/2016 | $218,894.45 | | | $312.25 | | $0.00 | $506,596.58 | $0.00 | -$55,237.85 | $7,749.25 | $0.00 |
| 9/18/2023 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $218,894.45 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$55,237.85 | $7,774.25 | $0.00 |
| 9/18/2023 | | | $325.00 | FC Fees | 11/1/2016 | $218,894.45 | | | | $325.00 | $0.00 | $506,596.58 | $0.00 | -$55,237.85 | $8,099.25 | $0.00 |
| 10/1/2023 | $2,742.54 | | | Payment Due | 11/1/2016 | $221,636.99 | | | | | $0.00 | $506,596.58 | $0.00 | -$55,237.85 | $8,099.25 | $0.00 |
| 10/4/2023 | | | $312.25 | Hazard Insurance Advance | 11/1/2016 | $221,636.99 | | | $312.25 | | $0.00 | $506,596.58 | $0.00 | -$55,550.10 | $8,099.25 | $0.00 |
| 10/16/2023 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $221,636.99 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$55,550.10 | $8,124.25 | $0.00 |
| 11/1/2023 | $2,742.54 | | | Payment Due | 11/1/2016 | $224,379.53 | | | | | $0.00 | $506,596.58 | $0.00 | -$55,550.10 | $8,124.25 | $0.00 |
| 11/2/2023 | | | $312.25 | Hazard Insurance Advance | 11/1/2016 | $224,379.53 | | | $312.25 | | $0.00 | $506,596.58 | $0.00 | -$55,862.35 | $8,124.25 | $0.00 |
| 11/13/2023 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $224,379.53 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$55,862.35 | $8,149.25 | $0.00 |
| 11/16/2023 | | | $85.00 | AVM | 11/1/2016 | $224,379.53 | | | | $85.00 | $0.00 | $506,596.58 | $0.00 | -$55,862.35 | $8,234.25 | $0.00 |
| 12/1/2023 | $2,742.54 | | | Payment Due | 11/1/2016 | $227,122.07 | | | | | $0.00 | $506,596.58 | $0.00 | -$55,862.35 | $8,234.25 | $0.00 |
| 12/4/2023 | | | $312.25 | Hazard Insurance Advance | 11/1/2016 | $227,122.07 | | | $312.25 | | $0.00 | $506,596.58 | $0.00 | -$56,174.60 | $8,234.25 | $0.00 |
| 12/12/2023 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $227,122.07 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$56,174.60 | $8,259.25 | $0.00 |
| 1/1/2024 | $2,742.54 | | | Payment Due | 11/1/2016 | $229,864.61 | | | | | $0.00 | $506,596.58 | $0.00 | -$56,174.60 | $8,259.25 | $0.00 |
| 1/4/2024 | | | $325.00 | FC Fees | 11/1/2016 | $229,864.61 | | | | $325.00 | $0.00 | $506,596.58 | $0.00 | -$56,174.60 | $8,584.25 | $0.00 |
| 1/4/2024 | | | $312.25 | Hazard Insurance Advance | 11/1/2016 | $229,864.61 | | | $312.25 | | $0.00 | $506,596.58 | $0.00 | -$56,486.85 | $8,584.25 | $0.00 |
| 1/17/2024 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $229,864.61 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$56,486.85 | $8,609.25 | $0.00 |
| 2/1/2024 | $2,742.54 | | | Payment Due | 11/1/2016 | $232,607.15 | | | | | $0.00 | $506,596.58 | $0.00 | -$56,486.85 | $8,609.25 | $0.00 |
| 2/2/2024 | | | $312.25 | Hazard Insurance Advance | 11/1/2016 | $232,607.15 | | | $312.25 | | $0.00 | $506,596.58 | $0.00 | -$56,799.10 | $8,609.25 | $0.00 |
| 2/12/2024 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $232,607.15 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$56,799.10 | $8,634.25 | $0.00 |
| 3/1/2024 | $2,742.54 | | | Payment Due | 11/1/2016 | $235,349.69 | | | | | $0.00 | $506,596.58 | $0.00 | -$56,799.10 | $8,634.25 | $0.00 |
| 3/4/2024 | | | $312.25 | Hazard Insurance Advance | 11/1/2016 | $235,349.69 | | | $312.25 | | $0.00 | $506,596.58 | $0.00 | -$57,111.35 | $8,634.25 | $0.00 |
| 3/7/2024 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $235,349.69 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$57,111.35 | $8,659.25 | $0.00 |
| 3/15/2024 | | | $3,036.93 | City Tax Advance | 11/1/2016 | $235,349.69 | | | $3,036.93 | | $0.00 | $506,596.58 | $0.00 | -$60,148.28 | $8,659.25 | $0.00 |
| 3/28/2024 | | | $325.00 | FC Fees | 11/1/2016 | $235,349.69 | | | | $325.00 | $0.00 | $506,596.58 | $0.00 | -$60,148.28 | $8,984.25 | $0.00 |
| 4/1/2024 | $2,742.54 | | | Payment Due | 11/1/2016 | $238,092.23 | | | | | $0.00 | $506,596.58 | $0.00 | -$60,148.28 | $8,984.25 | $0.00 |
| 4/3/2024 | | | $312.25 | Hazard Insurance Advance | 11/1/2016 | $238,092.23 | | | $312.25 | | $0.00 | $506,596.58 | $0.00 | -$60,460.53 | $8,984.25 | $0.00 |
| 4/16/2024 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $238,092.23 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$60,460.53 | $9,009.25 | $0.00 |
| 5/1/2024 | $2,742.54 | | | Payment Due | 11/1/2016 | $240,834.77 | | | | | $0.00 | $506,596.58 | $0.00 | -$60,460.53 | $9,009.25 | $0.00 |
| 5/2/2024 | | | $312.25 | Hazard Insurance Advance | 11/1/2016 | $240,834.77 | | | $312.25 | | $0.00 | $506,596.58 | $0.00 | -$60,772.78 | $9,009.25 | $0.00 |
| 5/8/2024 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $240,834.77 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$60,772.78 | $9,034.25 | $0.00 |

Mortgage Proof of Claim Attachment _____ (12/23)

**Part 5: Loan Payment History from First Date of Default**

| | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | Balance After Amount Received or Incurred | | | | |
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/1/2024 | $2,857.47 | | | Payment Due | 11/1/2016 | $243,692.24 | | | | | $0.00 | $506,596.58 | $0.00 | -$60,772.78 | $9,034.25 | $0.00 |
| 6/7/2024 | | | $325.00 | FC Fees | 11/1/2016 | $243,692.24 | | | | $325.00 | $0.00 | $506,596.58 | $0.00 | -$60,772.78 | $9,359.25 | $0.00 |
| 6/7/2024 | | | $343.25 | Hazard Insurance Advance | 11/1/2016 | $243,692.24 | | | $343.25 | | $0.00 | $506,596.58 | $0.00 | -$61,116.03 | $9,359.25 | $0.00 |
| 6/10/2024 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $243,692.24 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$61,116.03 | $9,384.25 | $0.00 |
| 7/1/2024 | $2,857.47 | | | Payment Due | 11/1/2016 | $246,549.71 | | | | | $0.00 | $506,596.58 | $0.00 | -$61,116.03 | $9,384.25 | $0.00 |
| 7/3/2024 | | | $343.25 | Hazard Insurance Advance | 11/1/2016 | $246,549.71 | | | $343.25 | | $0.00 | $506,596.58 | $0.00 | -$61,459.28 | $9,384.25 | $0.00 |
| 7/22/2024 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $246,549.71 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$61,459.28 | $9,409.25 | $0.00 |
| 8/1/2024 | $2,857.47 | | | Payment Due | 11/1/2016 | $249,407.18 | | | | | $0.00 | $506,596.58 | $0.00 | -$61,459.28 | $9,409.25 | $0.00 |
| 8/2/2024 | | | $343.25 | Hazard Insurance Advance | 11/1/2016 | $249,407.18 | | | $343.25 | | $0.00 | $506,596.58 | $0.00 | -$61,802.53 | $9,409.25 | $0.00 |
| 8/26/2024 | | | $25.00 | Property Inspection Fee | 11/1/2016 | $249,407.18 | | | | $25.00 | $0.00 | $506,596.58 | $0.00 | -$61,802.53 | $9,434.25 | $0.00 |
| 8/28/2024 | | | $3,036.93 | City Tax Advance | 11/1/2016 | $249,407.18 | | | $3,036.93 | | $0.00 | $506,596.58 | $0.00 | -$64,839.46 | $9,434.25 | $0.00 |
| 9/1/2024 | $2,857.47 | | | Payment Due | 11/1/2016 | $252,264.65 | | | | | $0.00 | $506,596.58 | $0.00 | -$64,839.46 | $9,434.25 | $0.00 |
| 9/4/2024 | | | $343.25 | Hazard Insurance Advance | 11/1/2016 | $252,264.65 | | | $343.25 | | $0.00 | $506,596.58 | $0.00 | -$65,182.71 | $9,434.25 | $0.00 |
| 9/9/2024 | | | $325.00 | FC Fees | 11/1/2016 | $252,264.65 | | | | $325.00 | $0.00 | $506,596.58 | $0.00 | -$65,182.71 | $9,759.25 | $0.00 |
| 9/23/2024 | | | $20.00 | Property Inspection Fee | 11/1/2016 | $252,264.65 | | | | $20.00 | $0.00 | $506,596.58 | $0.00 | -$65,182.71 | $9,779.25 | $0.00 |
| 10/1/2024 | $2,857.47 | | | Payment Due | 11/1/2016 | $255,122.12 | | | | | $0.00 | $506,596.58 | $0.00 | -$65,182.71 | $9,779.25 | $0.00 |
| 10/2/2024 | | | $343.25 | Hazard Insurance Advance | 11/1/2016 | $255,122.12 | | | $343.25 | | $0.00 | $506,596.58 | $0.00 | -$65,525.96 | $9,779.25 | $0.00 |
| 10/16/2024 | | | $867.50 | FC Fees | 11/1/2016 | $255,122.12 | | | | $867.50 | $0.00 | $506,596.58 | $0.00 | -$65,525.96 | $10,646.75 | $0.00 |
| 10/18/2024 | | | $20.00 | Property Inspection Fee | 11/1/2016 | $255,122.12 | | | | $20.00 | $0.00 | $506,596.58 | $0.00 | -$65,525.96 | $10,666.75 | $0.00 |
| 10/21/2024 | | | $85.00 | AVM | 11/1/2016 | $255,122.12 | | | | $85.00 | $0.00 | $506,596.58 | $0.00 | -$65,525.96 | $10,751.75 | $0.00 |
| 10/21/2024 | | | $6.00 | Court Costs | 11/1/2016 | $255,122.12 | | | | $6.00 | $0.00 | $506,596.58 | $0.00 | -$65,525.96 | $10,757.75 | $0.00 |
| 10/21/2024 | | | $250.00 | Sale Fee | 11/1/2016 | $255,122.12 | | | | $250.00 | $0.00 | $506,596.58 | $0.00 | -$65,525.96 | $11,007.75 | $0.00 |
| 11/1/2024 | $2,857.47 | | | Payment Due | 11/1/2016 | $257,979.59 | | | | | $0.00 | $506,596.58 | $0.00 | -$65,525.96 | $11,007.75 | $0.00 |
| 11/6/2024 | | | $343.25 | Hazard Insurance Advance | 11/1/2016 | $257,979.59 | | | $343.25 | | $0.00 | $506,596.58 | $0.00 | -$65,869.21 | $11,007.75 | $0.00 |
| 11/8/2024 | | | $235.25 | FC Mail Cost | 11/1/2016 | $257,979.59 | | | | $235.25 | $0.00 | $506,596.58 | $0.00 | -$65,869.21 | $11,243.00 | $0.00 |
| 11/14/2024 | | | $325.00 | FC Fees | 11/1/2016 | $257,979.59 | | | | $325.00 | $0.00 | $506,596.58 | $0.00 | -$65,869.21 | $11,568.00 | $0.00 |
| 11/21/2024 | | | $1,545.60 | Publication Fee | 11/1/2016 | $257,979.59 | | | | $1,545.60 | $0.00 | $506,596.58 | $0.00 | -$65,869.21 | $13,113.60 | $0.00 |
| 11/21/2024 | | | $400.00 | Auctioneers Fee | 11/1/2016 | $257,979.59 | | | | $400.00 | $0.00 | $506,596.58 | $0.00 | -$65,869.21 | $13,513.60 | $0.00 |
| 11/21/2024 | | | | Bankruptcy Filed | 11/1/2016 | | | | | | | | | | | |
| 11/21/2024 | $139,142.46 | | | Accr Int For BK Filing | 11/1/2016 | $257,979.59 | | | | | $0.00 | $506,596.58 | $0.00 | -$65,869.21 | $13,513.60 | $0.00 |

## PROOF OF CLAIM DISCLOSURES

IN RE: **REDDICK, MARIA DENISE aka Maria "BeBe" Reddick**
**dba BeBe Realty**
UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA - WASHINGTON

CASE NO. 24-00393-ELG

CREDITOR:  DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR SAXON ASSET SECURITIES TRUST 2007-4, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2007-4

1. The amount of the post-petition payments is subject to change per the terms of the Note and Deed of Trust/Mortgage.
2. This Proof of Claim shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004 notwithstanding Aldridge Pite, LLP's participation in this proceeding. Moreover, the within party does not authorize Aldridge Pite, LLP, either expressly or impliedly through Aldridge Pite, LLP's participation in this proceeding, to act as its agent for purpose of service under Fed. R. Bankr. P. 7004.

Case number: 24-00393-ELG

Debtor: MARIA DENISE REDDICK AKA MARIA "BEBE" REDDICK DBA BEBE REALTY

**Basis for asserting that "Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities Trust 2007-4, Mortgage Loan Asset-Backed Certificates, Series 2007-4" has the right to foreclose**

PHH Mortgage Corporation services the underlying mortgage loan and note for the property referenced in this Proof of Claim for:

Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities Trust 2007-4, Mortgage Loan Asset-Backed Certificates, Series 2007-4

(hereinafter, "noteholder") and is entitled to proceed accordingly. Should the Automatic Stay be lifted and/or set aside by Order of this Court or if this case is dismissed or if the Debtor obtains a discharge and a foreclosure action is commenced or recommenced, said foreclosure action will be conducted in the name of the noteholder. The noteholder has the right to foreclose because (check the applicable below):

___ Noteholder is the owner of the note.

_X__ Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to Noteholder or has been duly endorsed.

___ Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent, has possession of the promissory note and will enforce the promissory note as transferee in possession.

___ Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder is unable to find the promissory note and will seek to prove the promissory note through the filing of a lost note affidavit.

___ Noteholder is the successor trustee and transferee in possession of the security instrument for the referenced loan.

**newrez**

C/O PHH Mortgage Services| PO BOX 24738
West Palm Beach FL 33416

**MARIA D REDDICK**
4012 14TH ST NW
WASHINGTON DC 20011-5524

**Questions:** Visit us at
www.MortgageQuestions.com
Call toll Free: **1-888-820-6474**
Fax: 1-856-917-8300

**Statement Date:** November 29, 2024
**Account Number:**

**Property Address:**
4012 14TH ST NW
WASHINGTON, DC 20011

## Escrow Analysis Statement

Dear: MARIA D REDDICK

As your servicer, we have safeguards in place to make sure there's enough money to make the tax and insurance payments. These safeguards protect you from unexpected payment changes. **See below for details of what changed as well as when the new monthly payment will take effect.**

**1.    Your New Monthly Mortgage Payment**

The new monthly mortgage payment includes changes to the escrow payment amount. See Sections 2 for what's changed in the escrow account.

New monthly mortgage payment
**$2,805.67**
**Effective Date: December 2024**

**PLEASE NOTE:** If you use a bill pay service to make the payments, YOU must adjust the amount with your provider. If you're enrolled in Autopay, WE'LL automatically adjust the payment.

| New Monthly Payment | | |
|---|---|---|
| | Current | New |
| Principal and Interest Amount | $1,956.26 | $1,956.26 |
| Escrow Payment | $670.31 | $849.41 |
| Total Monthly Payment | $2,626.57 | $2,805.67 |
| Difference in Monthly Payment: $179.10 | | |

**2.    What Changed?**

The new escrow payment includes changes to the tax and insurance amounts. The chart below shows what has changed in the escrow account. The anticipated annual escrow amounts include changes in taxes and insurance.

| HERE'S HOW TO CALCULATE YOUR NEW MONTHLY ESCROW PAYMENT | | |
|---|---|---|
| Total [Taxes and Insurance] | Divide by 12 Months | New Monthly Escrow Payment |
| $10,192.86  /12 = $849.41 | | |

| Tax Insurance Type | CURRENT Annual Amount | NEW Annual Amount |
|---|---|---|
| City Tax | $6,011.64 | $6,073.86 |
| Hazard Insurance | $3,747.00 | $4,119.00 |
| Annual Amount | $9,758.64 | $10,192.86 |

**Other taxes/other insurance may include school district, village tax, water & sewer, irrigation, agency fees, ground rent and windstorm insurance.

**3.    Your Escrow Details**

The **required minimum escrow balance** is the lowest positive balance allowed in the escrow account at any given time.

We require the escrow account to always maintain 2 month(s) of monthly escrow payment. This helps us minimize the impact to the monthly mortgage payment when property tax and insurance rates increase. See Section 4 for details

| | |
|---|---|
| Required Minimum Escrow Balance | $3,217.23 |
| Anticipated Escrow Balance | $2,353.16 |
| Escrow adjusted per Proof of Claim | $864.07 |

We determine the **anticipated escrow balance** using the current tax and insurance expenses and the anticipated escrow payments for the upcoming year. See Section 2 for details. To balance the account, we compare the estimated lowest account balance to the new anticipated escrow balance. See Section 4 for details.

The difference between the required minimum escrow balance and the anticipated escrow balance can leave a shortage or overage. Based on our review the escrow account has sufficient funds.

**4.    Anticipated Escrow Amounts**

Over the next 12 months, we project the following activity will occur in the escrow account. The required minimum escrow balance in the account should be no less than $1,698.81 for the upcoming year. This is known as the low point and is indicated as LP below. The anticipated lowest account balance of $834.74 will be reached in August 2025. The difference between the required balance of $1,698.81 and the

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

anticipated balance of $834.74 resulted in the escrow account having enough funds for the coming year.

| Date | Description | ANTICIPATED AMOUNTS PAID INTO THE ESCROW ACCOUNT ($) | ANTICIPATED AMOUNTS PAID OUT OF THE ESCROW ACCOUNT ($) | ANTICIPATED ESCROW BALANCE ($) | REQUIRED ESCROW ACCOUNT BALANCE ($) |
|---|---|---|---|---|---|
| | Opening Balance | | | $2,353.16 | $3,217.23 |
| Dec 2024 | HAZARD INS. | 849.41 | 343.25 | 2,859.32 | 3,723.39 |
| Jan 2025 | HAZARD INS. | 849.41 | 343.25 | 3,365.48 | 4,229.55 |
| Feb 2025 | HAZARD INS. | 849.41 | 343.25 | 3,871.64 | 4,735.71 |
| Mar 2025 | CITY/TWN TAX | 849.41 | 3,036.93 | 1,684.12 | 2,548.19 |
| Mar 2025 | HAZARD INS. | 0.00 | 343.25 | 1,340.87 | 2,204.94 |
| Apr 2025 | HAZARD INS. | 849.41 | 343.25 | 1,847.03 | 2,711.10 |
| May 2025 | HAZARD INS. | 849.41 | 343.25 | 2,353.19 | 3,217.26 |
| Jun 2025 | HAZARD INS. | 849.41 | 343.25 | 2,859.35 | 3,723.42 |
| Jul 2025 | HAZARD INS. | 849.41 | 343.25 | 3,365.51 | 4,229.58 |
| Aug 2025 | CITY/TWN TAX | 849.41 | 3,036.93 | 1,177.99 | 2,042.06 |
| Aug 2025 | HAZARD INS. | 0.00 | 343.25 | 834.74 | 1,698.81 LP |
| Sep 2025 | HAZARD INS. | 849.41 | 343.25 | 1,340.90 | 2,204.97 |
| Oct 2025 | HAZARD INS. | 849.41 | 343.25 | 1,847.06 | 2,711.13 |
| Nov 2025 | HAZARD INS. | 849.41 | 343.25 | 2,353.22 | 3,217.29 |
| Total | | $10,192.92 | $10,192.86 | | |

The enclosed update follows notice of the account's involvement in a bankruptcy petition, filed on 11/21/2024 under chapter 13 of the Bankruptcy Code. This statement should be reviewed carefully. The mortgage payment may be affected. Please contact us at the number above if this account is not part of a Chapter 13 proceeding or plan. If this account is subject to any other Bankruptcy protection or received an Order of Discharge in a Chapter 7 bankruptcy case, or received any other discharge under the U.S Bankruptcy Code that applied to the referenced property, please be advised that this Notice is for information purposes only and not intended as an attempt to collect a debt against you personally.

**5.  Escrow Account History**

| | | AMOUNT PAID TO ESCROW | | AMOUNT WE PAID FROM ESCROW | | ESCROW BALANCE | |
|---|---|---|---|---|---|---|---|
| Date | Description | Estimated ($) | Actual ($) | Estimated ($) | Actual ($) | Estimated ($) | Actual ($) |
| | Opening balance | | | | | $3,098.24 | -$60,772.78 |
| Jun 2024 | HAZARD INS. | 813.22 | * | 312.25 | 343.25 * | 3,599.21 | -61,116.03 |
| Jul 2024 | HAZARD INS. | 813.22 | * | 312.25 | 343.25 * | 4,100.18 | -61,459.28 |
| Aug 2024 | CITY/TWN TAX | 813.22 | * | 2,974.71 | 3036.93 * | 1,938.69 | -64,496.21 |
| Aug 2024 | HAZARD INS. | | | 312.25 | 343.25 * | 1,626.44 | -64,839.46 |
| Sep 2024 | HAZARD INS. | 813.22 | * | 312.25 | 343.25 * | 2,127.41 | -65,182.71 |
| Oct 2024 | HAZARD INS. | 813.22 | * | 312.25 | 343.25 * | 2,628.38 | -65,525.96 |
| Nov 2024 | HAZARD INS. | 813.22 | 68,222.37 *E | 312.25 | 343.25 *E | 3,129.35 | 2,353.16 |
| Dec 2024 | HAZARD INS. | 813.22 | * | 312.25 | * | 3,630.32 | |
| Jan 2025 | HAZARD INS. | 813.22 | * | 312.25 | * | 4,131.29 | |
| Feb 2025 | HAZARD INS. | 813.22 | * | 312.25 | * | 4,632.26 | |
| Mar 2025 | CITY/TWN TAX | 813.22 | * | 3,036.93 | * | 2,408.55 | |
| Mar 2025 | HAZARD INS. | | | 312.25 | * | 2,096.30 | |
| Apr 2025 | HAZARD INS. | 813.22 | * | 312.25 | * | 2,597.27 | |
| May 2025 | HAZARD INS. | 813.22 | * | 312.25 | * | 3,098.24 | |
| Totals | | $9,758.64 | $68,222.37 | $9,758.64 | $5,096.43 | | |

The letter E in the table above indicates that all or a portion of a payment has not happened but is estimated to happen. An asterisk (*) indicates a difference from projected activity either in the amount or date.

www.MortgageQuestions.com    EA200
This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

## What is an escrow analysis?

An Escrow Analysis is a review of your escrow account to ensure enough funds are collected during the year to pay upcoming installments of your insurance premium(s) and/or property taxes. Any increase or decrease to your annual property taxes or insurance premiums may cause the mortgage payment amount to change. We provide details of the annual analysis in the Escrow Account Statement. The statement includes the most recent escrow review. You may receive more than one analysis in the year. There are a number of reasons for an interim escrow analysis.

The most common reasons are:

- The loan was acquired from another servicer.
- A material change to insurance or tax amounts due.
- Changes after closing.
- Change in tax or insurance due dates.

## How is the required escrow beginning account balance determined?

The required beginning escrow balance is made up of a cushion plus any prorated taxes and insurance needed to fulfill the anticipated disbursements for the next 12 months.

## Why did the monthly escrow payment change?

The monthly escrow payment is comprised of 1/12th of all anticipated annual disbursements. If there is an increase or decrease in the annual tax or insurance amounts the monthly escrow payment will change. Please refer to the escrow analysis for a more detailed explanation of the disbursement amounts.

## How did you calculate the new escrow payment?

We list all possible disbursements or expenses such as property taxes or insurance premiums to be paid on your behalf for the next 12 months. We take the total and divide the amount by 12 payments. Total anticipated disbursements divided by 12 payments equals the Monthly Escrow Payment. Due to changes in property taxes or insurance premiums, it is possible the escrow account could end up with a balance which is less than the target cushion amount. This is referred to as a shortage.

Any shortage of funds in the escrow account will be determined at the time of the escrow analysis. Additionally, it is possible the escrow account could end up with a balance which is greater than the required cushion amount. This is referred to as a surplus.

## What is an escrow cushion?

An escrow cushion is the amount of money set aside in the escrow account to cover any unanticipated costs such as an increase in property taxes or insurance premiums and prevents the escrow balance from being overdrawn. By law the cushion must be no greater than one-sixth (1/6) of the estimated total annual disbursements from the escrow account

## If the escrow account has a surplus, when will I receive the overage check?

If the escrow analysis resulted in an escrow surplus greater than $50.00 and the account is not more than 30 days past due, has not been referred to foreclosure, and the account is not in bankruptcy at the time the escrow analysis is performed, an escrow refund check will either be included with the escrow analysis statement or sent under separate cover within 30 business days.

Any surplus under $50.00 will be adjusted from the monthly escrow payment.

## Where do I send the escrow shortage payment?

You may direct deposit the escrow shortage amount to the escrow account using our pay by phone service or website. There may be fees associated with these payment services. You may also send in funds to escrow by mail. If sending by mail, be sure to write the account number on the check and specify "ESCROW application" on the memo line. Mail to:

PHH Mortgage
PO Box 371867
Pittsburgh, PA 15250-7867

Overnight mail:
PHH Mortgage
Attn: 37186
500 Ross Street 154-0470
Pittsburgh, PA 15250

Once the escrow funds are received, the monthly escrow payment will be adjusted within 10 business days of posting. If the escrow analysis discloses a shortage greater than one month's escrow payment, PHH cannot and does not require repayment of this amount and, instead, PHH has spread any shortage across the monthly escrow payments.

## How do I remove the escrow account?

Contact us to request a review of the loan for escrow waiver eligibility. Upon receiving your written request, subject to eligibility based on investor guidelines we will review and send out notification with the decision.

## What should I do if the account is escrowed and I received a delinquent tax bill, tax exemption, or tax reduction notice?

Write the account number on the tax correspondence and share it with us:

Email: KanaTax@MortgageFamily.com
Fax: 1-562-682-8880
Mail: PHH Mortgage Servicing
Attn: Tax Department
PO Box 24665
West Palm Beach FL 33416-4665

## What do I do if the account was escrowed as a result of a delinquent tax payment notice and I have proof of payment?

You can send the proof of payment to us. Write your account number on the correspondence and send it to us:

Email: ProofOfTaxPayments@ MortgageFamily.com
Fax: 1-561-682-8880
Mail: PHH Mortgage Servicing
Attn: Tax Department
PO Box 24665
West Palm Beach FL 33416-4665

## What should I do if I receive a check from my insurance carrier for property damage or have questions regarding an existing claim?

Please call us at 1-888-882-1815, Monday through Friday 8 am - 9 pm ET and Saturday 8 am - 5 pm ET.

## What should I do if I change insurance carriers?

Insurance policy information can be uploaded on our website at MyCoverageInfo.com/ MortgageFamily. You can also send us a copy of the insurance declaration page by fax to 1-937-525-4210 or by email to MortgageFamily@MyCoverageInfo.com.

If you have any questions regarding your insurance policy information, please contact our Insurance Customer Care center directly for further assistance at 1-888-882-1855, Monday through Friday, 8 am - 9 pm ET and Saturday 8 am - 5 pm ET

Ocwen Loan Servicing, LLC
P.O. Box 24737
West Palm Beach, Florida 33416-4737
*(Do not send correspondence or payments to the above address.)*          WWW.OCWEN.COM

## Helping Homeowners Is What We Do! ™

Thursday, June 25, 2015

Maria D Reddick
4012 14th St Nw
Washington, DC 20011

**Your executed Home Affordable Modification Agreement!**

Re:    Loan Number: ▮▮▮▮▮▮
       Property Address:  4012 14th St Nw | Washington, DC 20011

Dear Borrower(s):

We are glad to be able to assist all qualifying homeowners save their homes from foreclosure and thank you for sending in your completed Home Affordable Modification Agreement.

Included with this letter is an executed copy of your Home Affordable Modification Agreement to keep for your records.

If you have any questions regarding your Home Affordable Modification Agreement, please call our Customer Care Center at (800) 746-2936 Monday to Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm and Sunday 12:00 pm to 9:00 pm ET, and remember **"Helping Homeowners is what we do!"**

Sincerely,

Ocwen Loan Servicing, LLC

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.* ▮▮▮▮▮

-BD-PRA

Investor Loan # _____
After Recording Return To:
_____
_____
_____
This document was prepared by _____
_____ [Space Above This Line For Recording Data] _____

## HOME AFFORDABLE MODIFICATION AGREEMENT

## (Step Two of Two-Step Documentation Process)

Borrower(s) ("I"): *Maria D Reddick*

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): **8/13/2007**

Loan Number ▇▇▇▇▇

Property Address: **4012 14th St Nw Washington, DC 20011 ("Property")**
*[and Legal Description if recordation is necessary]*

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Servicer, the Servicer will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations. I certify, represent to Servicer and agree:**

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. The certifications I have made concerning my intended use of the Property and the number of single-family properties that I own continue to be true and correct on the date hereof; and the Property has not been condemned;

    C. There has been no change in the ownership of the Property since I signed the Loan Documents;

    D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E. Under penalty of perjury, all documents and information I have provided to Servicer in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F. If Servicer requires me to obtain credit counseling in connection with the Program, I will do so;

    G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan; and

-BD-PRA

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Agreement;

B. If prior to the Modification Effective Date as set forth in Section 3 the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents; and

C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 7/1/2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 7/1/2015.

A. The new Maturity Date will be: 1/1/2038, at which time a final balloon payment in an amount equal to all remaining amounts owed under the Loan Documents will be due.

B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be $748,146.33 (the "New Principal Balance").

C. $233,246.33 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $233,246.33 of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 4/1/2015, the Servicer shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $514,900.00. Interest at the rate of 3.37500% will begin to accrue on the Interest Bearing Principal Balance as of 6/1/2015 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 7/1/2015. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-Loans Maturity | 3.37500% | 6/1/2015 | $1,956.26 | $574.22, adjusts annually after year 1 | $2,530.48, adjusts annually after year 1 | 7/1/2015 | 271 |
| · | · | · | · | · | · | · | · |
| · | · | · | · | · | · | · | · |
| · | · | · | · | · | · | · | · |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step or simple interest rate.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

-BD-PRA

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full (1) the Deferred Principal Balance (deferred principal balance will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the deferred principal balance.), if any, and (2) any other amounts still owed under the Loan Documents, by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance (The new principal balance less the deferred principal balance shall be referred to as the "interest bearing principal balance), or (iii) the new Maturity Date.

G. If I make a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Servicer.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. Funds for Escrow Items. I will pay to Servicer on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D. I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount. Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D.

Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Servicer can require under RESPA. Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I can agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

-BD-PRA

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Servicer shall promptly refund to me any Funds held by Servicer.

E. That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Servicer shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Servicer exercises this option, Servicer shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Servicer will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

J. If under the Servicer's procedures a title endorsement or subordination agreements are required to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Servicer has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as Servicer determines necessary.

K. That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void.

L. Corrections and Omissions. You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note. If an error in the terms hereof is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error. Should you elect not to sign any such corrected Agreement, your loan will revert to the terms of your original Loan Documents.

M. Mortgage Electronic Registration Systems, Inc. "MERS" is a separate corporation existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026 Flint, MI 48501-2026, (888) 679-MERS. In cases where the Loan has been registered (solely as nominee for lender and lender's successors and assigns) with MERS and MERS is named as mortgagee in the Loan Documents, MERS, if necessary to comply with law or custom, has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Servicer including, but not limited to, releasing and canceling the mortgage loan.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

-BD-PRA

☐ *If this box is checked, Borrower(s) signature must be notarized.*

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here→ _____  6, 6, 2015  Date
Maria D Reddick

State of District of Columbia)

County of _____ )

On _____ before me, _____, personally appeared
_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her
authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of District of Columbia that the foregoing paragraph is true
and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date ___/___/___

Personally Known_____ OR Produced Identification_____

Type of Identification Produced _____

Sign Here→ _____  ___/___/___  Date

State of District of Columbia)

County of _____ )

On _____ before me, _____, personally appeared
_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her
authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of District of Columbia that the foregoing paragraph is true
and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date ___/___/___

Personally Known_____ OR Produced Identification_____

Type of Identification Produced _____

Page 5 of 8

-BD-PRA

*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave page 6 blank and return it with the rest of the agreement.

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here→ _____ ___/___/___ Date
State of District of Columbia)

County of _____)

On _____ before me, _____, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of District of Columbia that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date___/___/___

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

Sign Here→ _____ ___/___/___ Date
State of District of Columbia)

County of _____)

On _____ before me, _____, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of District of Columbia that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date___/___/___

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

Servicer JUN 2 6 2015
Date
If applicable: _____
Mortgage Electronic Registration Systems, Inc. – Nominee for Servicer

By: _Joseph Monaco_  Authorized Officer
Joseph Monaco

Page 6 of 8

-BD-PRA

## BALLOON PAYMENT DISCLOSURE

Borrower(s) ("I"): Maria D Reddick

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 8/13/2007

Loan Number:

Property Address: 4012 14th St Nw Washington, DC 20011

THIS BALLOON PAYMENT DISCLOSURE is made this 22 day of May, 2015, and is incorporated into and shall be deemed to supplement the Loan Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s). The Agreement contains a balloon payment provision representing the amount of the Deferred Principal Balance under the Agreement. The Agreement also contains a principal reduction feature that may reduce the Deferred Principal Balance in three equal installments of $77,748.78 in accordance with Section 3(C) of the Agreement, provided that the Borrower remains eligible for principal reduction for the time period specified in Section 3(C) of the Agreement.

A balloon payment is a scheduled lump sum usually due at the end of the mortgage loan term that is significantly larger than the other regularly scheduled periodic payments. This means that even if I make all payments full and on time, the loan will not be paid in full by the final payment date. The amount of the balloon payment may vary depending on my payment history. If my loan is an adjustable rate mortgage, the amount of the balloon payment also may vary based on any interest rate changes that occur during the life of the loan.

If the Borrower remains eligible for the time period specified in the following table, the Deferred Principal Balance will be adjusted to the amounts reflected in the table.

| Duration of Eligibility | Deferred Principal Balance due on Maturity |
|---|---|
| 7/1/2015 up to 4/1/2016 | $542,074.64 - NO ADJUSTMENT |
| 4/1/2016 up to 4/1/2017 | $464,325.87 |
| 4/1/2017 up to 4/1/2018 | $386,577.10 |
| 4/1/2018 up to 1/1/2038 | $308,828.31 |

THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS: AN INSTALLMENT OF $308,828.31 WILL BE DUE AND PAYABLE IN FULL ON 1/1/2038, PROVIDED THAT ALL PAYMENTS ARE MADE IN ACCORDANCE WITH THE LOAN TERMS AND THE INTEREST RATE DOES NOT CHANGE FOR THE ENTIRE LOAN TERM. The balloon payment on the loan modification I have applied for is due 271 months from the effective date of the modification.

*Notice required by North Dakota law:*

CAUTION TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN MODIFICATION THAT YOU OBTAIN AT THIS TIME.

If I cannot pay the balloon payment when due, I may have to obtain a new loan to make the balloon payment or I may lose my property through foreclosure. Before deciding to take this loan, I will consider my ability to pay the balloon payment when it comes due. In addition, the value of the real estate securing this loan may change during the term of the loan. On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

-BD-PRA

NEITHER OCWEN LOAN SERVICING, LLC NOR ANY LENDER TO WHICH THIS LOAN IS TRANSFERRED IS UNDER ANY OBLIGATION TO FINANCE THE AMOUNT OF THE BALLOON PAYMENT. THEREFORE, I MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS I OWN OR I MAY HAVE TO FIND ANOTHER LENDER TO REFINANCE THE LOAN.

ASSUMING THE OWNER OF MY LOAN OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, I WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.  I MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below.

SIGN

Borrower

Date  6/6/2015

SIGN

Borrower

Date

Doc# 2007129060
Filed & Recorded
10/05/2007    10:43AM
LARRY TODD
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
RECORDING          $        139.00
SURCHARGE          $          6.50
Total:             $        145.50

•Borrower  MARIA D REDDICK

Return to  STEWART MORTGAGE SERVICES
ATTENTION   TRAIL DOCS MS-TD 127
9700 BISSONNET, SUITE 1500
HOUSTON, TX 77036

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are also provided in Section 16

(A) **"Security Instrument"** means this document, which is dated August 13, 2007, together with all Riders to this document

(B) **"Borrower"** is MARIA D REDDICK  Borrower's address is 4012 14TH STREET NORTHWEST, WASHINGTON, DISTRICT OF COLUMBIA  20011  Borrower is the trustor under this Security Instrument

(C) **"Lender"** is SAXON MORTGAGE, INC  Lender is a CORPORATION organized and existing under the laws of the COMMONWEALTH OF VIRGINIA  Lender's address is 27121 TOWNE CENTRE DRIVE, SUITE 230, FOOTHILL RANCH, CA  92610  Lender is the beneficiary under this Security Instrument

(D) **"Trustee"** is JOHN M MERCER  Trustee's address is HENRICO COUNTY, VIRGINIA

(E) **"Note"** means the promissory note signed by Borrower and dated August 13, 2007. The Note states that Borrower owes Lender FIVE HUNDRED EIGHT THOUSAND FIVE HUNDRED and NO/100-----Dollars (U.S. $ 508,500.00) plus interest  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **September 1, 2037.**

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property"

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower [check box as applicable]

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | |
| ☐ 1–4 Family Rider | ☐ Biweekly Payment Rider | |
| ☒ Other(s) [specify]   Voluntary Arbitration Rider | | |

MDR

**DISTRICT OF COLUMBIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3009    1/01 (rev 5/02)      (Page 1 of 12 Pages)

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(L) "**Escrow Items**" means those items that are described in Section 3

(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(O) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

(P) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C §2601 et seq) and its implementing regulation, Regulation X (24 C.F.R Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender, (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the City of WASHINGTON

See Schedule A attached hereto and made a part hereof

**DISTRICT OF COLUMBIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3009    1/01 (rev. 5/02)    (Page 2 of 12 Pages)

which currently has the address of 4012 14TH STREET NORTHWEST,
[Street]
WASHINGTON, DISTRICT OF COLUMBIA          20011
[City]                                    [Zip Code]
                                          ("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows.
**1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note  Borrower shall also pay funds for Escrow Items pursuant to Section 3  Payments due under the Note and this Security Instrument shall be made in U.S. currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority  (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

*MDR*

**DISTRICT OF COLUMBIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3009    1/01 (rev 5/02)     (Page 3 of 12 Pages)

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time periods as Lender may require  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

DISTRICT OF COLUMBIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                          Form 3009    1/01 (rev 5/02)    (Page 4 of 12 Pages)

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

**DISTRICT OF COLUMBIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3009   1/01 (rev. 5/02)   (Page 5 of 12 Pages)

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repair and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property If it has reasonable cause, Lender may inspect the interior of the improvements on the Property Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property Lender's actions can include, but are not limited to (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed Borrower is not a party to the Mortgage Insurance.

**DISTRICT OF COLUMBIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**DISTRICT OF COLUMBIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3009    1/01 (rev. 5/02)    (Page 7 of 12 Pages)

WDR

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**DISTRICT OF COLUMBIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3009    1/01 (rev. 5/02)    (Page 8 of 12 Pages)

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

**DISTRICT OF COLUMBIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3009    1/01 (rev 5/02)    (Page 9 of 12 Pages)

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law  Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows.

**22. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall send written notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall give notice of sale by public advertisement as Trustee deems proper to protect the interests of Borrower and Lender. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.  Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5 00% of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee  Trustee shall release this Security Instrument  Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law

**24. Substitute Trustee.**  Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**DISTRICT OF COLUMBIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3009    1/01 (rev. 6/02)    (Page 10 of 12 Pages)

nor

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witness

_____ PHILIP H. NEFF _____  ......... ......
                Printed Name                                   Printed Name

Borrower's address   4012 14TH STREET NORTHWEST, WASHINGTON, DISTRICT OF COLUMBIA 20011

_____ (Seal)
MARIA D REDDICK —Borrower

---------- [Space Below This Line For Acknowledgment] ----------

State or District of **Maryland**    §
County of **Montgomery**    §

This instrument was acknowledged before me this **13** day of **August** 20 **07** , by
MARIA D REDDICK

_____
                                    Notary Public

My commission expires **3/1/10**

PHILIP H. NEFF
NOTARY PUBLIC STATE OF MARYLAND
COUNTY OF MONTGOMERY
My Commission Expires March 1, 2010

**DISTRICT OF COLUMBIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3009   1/01 (rev. 6/02)   *(Page 11 of 12 Pages)*

Borrower Name and Address.
MARIA D REDDICK
4012 14TH STREET NORTHWEST, WASHINGTON, DISTRICT OF COLUMBIA 20011

Lender Name and Address
SAXON MORTGAGE, INC.
27121 TOWNE CENTRE DRIVE, SUITE 230, FOOTHILL RANCH, CA 92610

Trustee Name and Address.
JOHN M MERCER
HENRICO COUNTY, VIRGINIA

## AFFIDAVIT

State or District of ___Montgom___
County of ___Montgom___ , to-wit.

MARIA D REDDICK
having been duly sworn, certify(ies) on the below date as follows

I the owner of the real property described within certify, subject to criminal penalties for making false
statements pursuant to D.C. Code Ann. § 22-2514, that the real property described within is either
Class 1 Property or Class 2 Property, as those classes of property are established pursuant to D.C. Code
Ann. § 47-813, with 5 or fewer units.

Date ___8/13/07___

Witnesses.

___PHILIP H. NEFF___ Printed Name

___Maria D. Reddick___ Printed Name

MARIA D REDDICK —Borrower    (Seal)

Sworn to and subscribed before me in my jurisdiction aforesaid this ___13___ day of
___april___, 20 07

Notary Public

My commission expires. ___3/1/10___

My Commission Expires March 1, 2010
COUNTY OF MONTGOMERY
NOTARY PUBLIC STATE OF MARYLAND
PHILIP H. NEFF

**DISTRICT OF COLUMBIA** - Single Family - Fannie Mac/Freddie Mac UNIFORM INSTRUMENT
Form 3009    1/01 (rev 5/02)    (Page 12 of 12 Pages)

Borrower:    MARIA D REDDICK

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In The Wall Street Journal)—Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 13th day of August, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to SAXON MORTGAGE, INC. ("Lender") of the same date and covering the property described in the Security Instrument and located at:

4012 14TH STREET NORTHWEST
WASHINGTON, DISTRICT OF COLUMBIA  20011
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT.    THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **12.5500 %**.  The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)Change Dates**
The interest rate I will pay may change on the first day of **September, 2012**, and on that day every 6th month thereafter.  Each date on which my interest rate could change is called a "Change Date."

**(B)The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C)Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **FOUR and ONE/HALF** percentage points ( **4.500 %**) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-**Fannie Mae** UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3138  1/01      (Page 1 of 2 Pages)

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 15.5500 % or less than 9.5500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage point (**1.00** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **18.5500** %

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

.......................................................................(Seal)
MARIA D REDDICK —Borrower

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-**Fannie Mae** UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                Form 3138  1/01    *(Page 2 of 2 Pages)*

Borrower: MARIA D REDDICK

## VOLUNTARY ARBITRATION RIDER

THIS RIDER is made this 13th day of August, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to SAXON MORTGAGE, INC. (the "Lender") of the same date and encumbering the property described in the Security Instrument and located at:

4012 14TH STREET NORTHWEST
WASHINGTON, DISTRICT OF COLUMBIA 20011
[Property Address]

As used in this Rider the term "Lender" includes Lender's successors and assigns, the company servicing the Note on Lender's behalf (the "Servicer"), any mortgage broker involved in the origination of the mortgage loan evidenced by the Note and Security Instrument, and any settlement agent, escrow agent or closing attorney involved in the settlement of the mortgage loan evidenced by the Note and Security Instrument.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**ARBITRATION OF DISPUTES.** All disputes, claims, or controversies arising from or related to the loan evidenced by the Note (the "Loan"), including statutory claims, shall be resolved by binding arbitration, and not by court action, except as provided under "Exclusions from Arbitration" below. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-14). In any arbitration hereunder, the arbitrator shall be appointed by, and the arbitration conducted pursuant to the rules of procedure of, either one of the following arbitration service providers as shall be selected by the party initiating such arbitration National Arbitration Forum or American Arbitration Association. However, if any law applicable to the Loan requires mortgage lenders to engage, or would otherwise impose enhanced regulatory restrictions on mortgage lenders to engage, any particular arbitration service provider, the parties agree to engage such specified provider. Any arbitration hearing shall be conducted within the Federal judicial district in which the Property is located, or within such other or more limited area as required by any applicable law. The arbitrator shall set forth in the award findings of fact and conclusions of law supporting the decision, which must be based on applicable law and supported by substantial evidence presented in the proceeding. Judgment upon the award may be entered by any court of competent jurisdiction. All disputes subject to arbitration under this agreement shall be arbitrated individually, and shall not be subject to being joined or combined in any proceeding with any claims of any persons or class of persons other than Borrower or Lender.

(09/29/2006)          (Page 1 of 3 Pages)

**FEES OF ARBITRATOR.** In any arbitration that pertains solely to the Loan, Borrower shall not be required to pay more than $125 in initial filing fees to the arbitrator. The Lender shall pay any balance of such initial fees. In addition, the Lender shall pay all other fees and costs of the arbitration. In no event shall either party be responsible for any fees or expenses of any of the other party's attorneys, witnesses, or consultants, or any other expenses, for which such other party reasonably would have been expected to be liable had such other party initiated a suit in the courts of the jurisdiction in which the Borrower resides regarding a similar dispute.

**EXCLUSION FROM ARBITRATION** This agreement shall not limit the right of Lender to (a) accelerate or require immediate payment in full of the secured indebtedness or exercise the other Remedies described in this Security Instrument before, during, or after any arbitration, including the right to foreclose against or sell the Property; (b) exercise the rights set forth in the Uniform Covenant labeled "Protection of Lender's Interest in the Property and Rights Under this Security Instrument" contained in this Security Instrument, or (c) exercise of the right under the terms of this Security Instrument to require payment in full of the indebtedness upon a transfer of the Property or a beneficial interest therein. Should Borrower appear in and contest any judicial proceeding initiated by Lender under this Exclusion, or initiate any judicial proceeding to challenge any action authorized by this Exclusion, without asserting any counterclaim or seeking affirmative relief against Lender, then upon request of Borrower such judicial proceedings shall be stayed or dismissed, and the matter shall proceed to arbitration in accordance with the section entitled "Arbitration of Disputes." Any dispute that could otherwise have been asserted as a counterclaim or grounds for relief in such a judicial proceeding shall be resolved solely in accordance with the section entitled "Arbitration of Disputes".

**WAIVER:** In the event your loan or an interest in your loan is transferred or sold to Freddie Mac or Fannie Mae, this Arbitration rider shall be void and cannot be reinstated by Lender or a subsequent holder or servicer of your loan. In the event of a transfer or sale to Freddie Mac or Fannie Mae, neither Lender nor any subsequent holder or servicer of your loan shall require you to submit to arbitration to resolve any dispute arising out of or relating in any way to your loan. Lender or lender's designee shall provide you with written notice in the event of a sale or transfer of your loan or an interest in your loan to Freddie Mac or Fannie Mae within sixty (60) days of such sale or transfer by Lender or an affiliate of Lender.

No provision of this agreement shall limit the right of Borrower to exercise Borrower's rights under the Uniform Covenant labeled "Borrower's Right to Reinstate After Acceleration."

(09/29/2006)    *(Page 2 of 3 Pages)*

**NOTICE:** BY SIGNING THIS ARBITRATION RIDER YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS DESCRIBED IN THE "ARBITRATION OF DISPUTES" SECTION ABOVE DECIDED EXCLUSIVELY BY ARBITRATION, AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT HAVE TO LITIGATE DISPUTES IN A COURT OR JURY TRIAL. DISCOVERY IN ARBITRATION PROCEEDINGS MAY BE LIMITED BY THE RULES OF PROCEDURE OF THE SELECTED ARBITRATION SERVICE PROVIDER.

THIS IS A VOLUNTARY ARBITRATION AGREEMENT. IF YOU DECLINE TO SIGN THIS ARBITRATION AGREEMENT, LENDER WILL NOT REFUSE TO COMPLETE THE LOAN TRANSACTION BECAUSE OF YOUR DECISION AND THE OTHER TERMS OF YOUR MORTGAGE LOAN WILL NOT BE AFFECTED.

BY SIGNING BELOW, Borrower accepts and agrees to the provisions contained in this Rider.

........................................................................ .... (Seal)
MARIA D REDDICK —Borrower

(09/29/2006)          (Page 3 of 3 Pages)

Exhibit "A"

Lot Numbered Five (5) in George C. Pumphrey's Subdivision of Lots in Square Numbered Twenty-Six Hundred Ninety-four (2694), in McCarthy and White's Subdivision of Part of A Tract called "Padsworth", as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 39 at Folio 12. *Lot 5 in square 2694*

Being the same property which by Deed dated 08/18/1997 and recorded 08/26/1997 as Instrument No. 907757155 which was granted and conveyed by James Mayfield, Jr., Personal Representative for The Estate of James W.W. Mayfield, Sr., Theresa May Mayfield, Widowed and unremarried, Jerome C. Mayfield, being also known as Jerome J. Crosby, unmarried, Victor O. Mayfield, unmarried and James W.W. Mayfield, Jr., unmarried unto Maria D. Reddick.

Tax ID 2694/0005

# SECURITY AFFIDAVIT

## CLASS 1 AND CLASS 2

I, Maria D. Reddick, the owner of the real property described within, certify, subject to criminal penalties for making false statements pursuant to Section 404 of the District of Columbia Theft and White Collar Crimes Act of 1982, effective December 1, 1982 (D.C. Law 4-164; D.C. Code 22-2514), that the real property described within is either Class 1 Property or Class 2 Property, as those classes of property are established pursuant to Section 412a of district of Columbia Real Property Tax Revision Act of 1974, approved September 3, 1974 (88 Stat. 1051 D.C. Code 47-813), with 5 or fewer units.

**Maria D. Reddick**

Subscribed and sworn to before me this 13th day of August, 2007.

Notary Public

My commission expires: _____

PHILIP H. NEFF
NOTARY PUBLIC STATE OF MARYLAND
COUNTY OF MONTGOMERY
My Commission Expires March 1, 2010

## CERTIFICATE OF ASSIGNMENT

Place of Record: Clerk s Office, Circuit Court, District of Columbia

Date of Deed of Trust:  08/13/2007      Recorded:        10/05/2007

Book/Page Number:    /          Instrument:      2007129060

Maker of Note:  Maria D Reddick

Trustees: John M Mercer

Note Holder: Saxon Mortgage Inc.

Amount Secured: Five hundred eight thousand five hundred and 00/100 ($508,500.00)

Note holder hereby assigns all of its right, title and interest in the Deed of Trust and the Note secured thereby to **Deutsche Bank National Trust Company,** as Trustee for Saxon Asset Securities Trust 2007-4

*See Legal Description attached hereto and made a part thereof.*
**Property Address: 4012 14th Street Northwest, Washington, DC 20011
Tax ID: 2694 0005**

Saxon Mortgage, Inc.

By: _____ John Cottrell

Title: _____ Vice President

State of _____ Texas
County of _____ Tarrant

This **8th** day of **September** 2008, _____ John Cottrell _____, personally came before me, The Undersigned Notary Public, _____ Regina C. Alexander _____, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same for the purpose and consideration therein expressed, in the capacity therein stated and as the act and deed of said entity.

Witness my hand and official seal this **8th** day of **September** 2008.

Notary Public

**Prepared By & Return to:
Tuscarora Title Corporation
Attn: Kelly Foltyn
803 Sycolin Road, Suite 302
Leesburg, VA. 20175**

REGINA C. ALEXANDER
Notary Public,
State of Texas
Comm. Exp. 07-29-11

## Legal Description

Lot Numbered Five (5) in George C. Pumphrey's Subdivision of Lots in Square
Numbered Twenty-Six Hundred Ninety-four (2694), in McCarthy and White's
Subdivision of Part of A Tract called "Padsworth", as per plat recorded in the Office of
the Surveyor for the District of Columbia in Liber 39 at Folio 12.Lot 5 in Square 2694.

Being the same property which by Deed dated 0811811997 and recorded 08/26/1997 as
Instrument No. 907757155 which was granted and conveyed by James Mayfield, Jr.,
Personal Representative for The Estate of James W.W. Mayfield, Sr., Theresa May
Mayfield, Widowed and unremarried, Jerome C. Mayfield, being also known as Jerome
J. Crosby, unmarried, Victor O. Mayfield, unmarried and James W.W. Mayfield, Jr.,
unmarried unto Maria D. Reddick.

Doc# 2008008117 Fees:$25.50
09/17/2008    10:32AM Pages 2
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING          $        20.00
SURCHARGE          $         5.50

# ADJUSTABLE RATE NOTE
## (LIBOR Six-Month Index (As Published In The Wall Street Journal)—Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

August 13, 2007                    WASHINGTON                    DISTRICT OF COLUMBIA
                                        [City]                                    [State]
                             4012 14TH STREET NORTHWEST
                         WASHINGTON, DISTRICT OF COLUMBIA 20011
                                  [Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 508,500.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **SAXON MORTGAGE, INC.**. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 12.5500%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **October 1, 2007**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **September 1, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 961105, Fort Worth, TX 76161-0105, or at a different place if required by the Note Holder.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-**Fannie Mae** UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3520  1/01       (Page 1 of 5 Pages)

INITIALS: MD X _____

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 5,446.74. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of **September, 2012**, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **FOUR and ONE/HALF** percentage points ( **4.500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **15.5500** % or less than **9.5500** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage point (**1.00** %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **18.5500** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-**Fannie Mae** UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                                    Form 3520  1/01      (Page 2 of 5 Pages)

INITIALS: _MBM_ _____

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of *Principal* only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

INITIALS: *MDR* _____

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest In Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                                    Form 3520  1/01       (Page 4 of 5 Pages)

INITIALS: _____

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

.................................................................(Seal)
MARIA D REDDICK —Borrower

[Sign Original Only]

Without Recourse
Pay to the Order of

Saxon Mortgage, Inc.

By: _____
DeeAnn Wyler, Vice-President

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                          Form 3520  1/01    (Page 5 of 5 Pages)

Loan Number: ████████

## **ALLONGE TO NOTE**

Original Loan Amount: $508,500.00
Note Date:            08/13/2007
Borrower:             MARIA D REDDICK
Property address:     4012 14TH ST NW
                      WASHINGTON, DC 20011

**PAY TO THE ORDER OF**

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR SAXON ASSET SECURITIES
TRUST 2007-4

**WITHOUT RECOURSE**

SAXON MORTGAGE, INC.

_____
Authorized Signer
BRYAN BLY ASST. VICE PRESIDENT